IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUTH SMITH, Individually and as Widow ) <br> for the Use and Benefit of Herself and the ) <br> Next of Kin of RICHARD SMITH, Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PFIZER INC., *et al.*, ) <br> ) <br> Defendants. ) | Case No. 3:05-0444 <br> Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion to Strike Late-Filed Rule 26 Disclosures filed by defendants Pfizer Inc. and Warner-Lambert Company LLC (Docket No. 60) and the plaintiff's response (Docket No. 62). For the reasons discussed below, the defendants' motion will be granted in part and denied in part.

## FACTS

This case involves the suicide of 79-year-old Richard Smith, who killed himself after taking the prescription medication Neurontin, which is manufactured by defendants Pfizer Inc. and Warner-Lambert Company LLC (collectively, "Pfizer" or "the defendants").[1] Smith had a history of back and joint problems, and he experienced chronic pain in the year leading up to his suicide. Smith's doctor prescribed Neurontin to treat this pain.

---

[1] Unless otherwise noted, the facts are drawn from the parties' submissions and the court's familiarity with the docket.

1

Smith's widow filed this suit in 2005, and the case was transferred to the District of Massachusetts for consolidated pre-trial proceedings with similar cases in MDL No. 1629, *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*. The plaintiff made her initial Rule 26 disclosure, identifying potential witnesses whom she might use to support her claims, on July 24, 2006. (Docket No. 62, Ex. 1.) She supplemented that disclosure on August 31, 2006. (*Id.* Ex. 2.)

On May 21, 2007, the plaintiff again supplemented her witness list by sending the defendants a letter attaching a spreadsheet of hundreds of names and addresses. (*Id.* Ex. 3.) This list was not organized in any discernable fashion, nor did it identify the subject matter of the witnesses' potential testimony or their connection to this case. Nearly all of the witnesses lived in or near Smith's hometown of Nashville, Tennessee. (*See id.*)

The parties discussed how to deal with this mass of potential witnesses, and on June 25, 2007, the defendants' counsel sent a letter to the plaintiff's counsel:

> [T]he following is our proposed agreement regarding Plaintiff's May 21, 2007, list of additional potential witnesses (the "List"). It is my understanding that you have not yet determined which, if any, of these potential witnesses you will call to testify at the time of trial. Accordingly, in order to avoid the unnecessary time and expense of deposing all of the witnesses on the List, the parties have agreed that counsel for Plaintiff will notify counsel for Pfizer in writing, and no later than sixty (60) days before the fact discovery deadline, of the name(s) of the witness(es) on the List they intend to have testify at trial.

(*Id.*, Ex. 5 at 1.)

The parties ultimately reached an agreement similar to this proposal. On September 6, 2007, the defendants' counsel again wrote to the plaintiff's counsel:

> This letter memorializes the agreements we reached earlier today .
> . . .
>
> 1. THE 450 INDIVIDUALS LISTED ON PLAINTIFF RUTH SMITH'S RULE 26(a) DISCLOSURES: The parties agree to disclose the names of the witnesses they intend to call at trial sixty (60) days prior to the start of trial. As to any witness who has not been deposed at the time of disclosure, the parties agree to make any such persons available for deposition.

(*Id.*, Ex. 6 at 1.) The letter also provided that the plaintiff would not object on timeliness grounds to depositions taken after the fact discovery deadline. (*Id.*) The plaintiff's lawyer accepted these terms, clarifying in his response letter that the 60-day pre-trial period applied to the defendants' witness disclosures as well. (*Id.* at 2.)

The plaintiff further supplemented her Rule 26 disclosures on October 9, 2007 and June 11, 2008. (Docket No. 66, Exs. 2-3.) On June 20, 2008, the magistrate judge for the MDL court entered a scheduling order stating that fact discovery would close on July 1, 2008. (Docket No. 62, Ex. 7 at 1.)

On August 13, 2008, January 9, 2009, and August 5, 2009, the plaintiff again supplemented her Rule 26 disclosures by adding potential witnesses. (Docket No. 66, Exs. 4-5; Docket No. 62, Ex. 8.) The defendants filed their most recent supplemental disclosure on March 4, 2009. (Docket No. 66, Ex. 7.) On September 2, 2009, the plaintiff filed an Emergency Request for Issuance of Suggestion of Remand in the MDL court, stating that "common issue and case-specific discovery is complete in this case." (Docket No. 62, Ex. 9 at 3.) The case was remanded to this court on November 9, 2009. On December 10, 2009, the court held a status conference and set trial for May 11, 2010. (Docket No. 38.)

On January 21, 2010, less than four months before trial, the plaintiff filed yet another supplemental Rule 26 disclosure. This disclosure included a number of previously undisclosed potential witnesses.[2] These newly identified witnesses can broadly be broken into two groups. The first group consists of witnesses who work for the defendants or who will testify regarding Neurontin generally:

> 54. Defendants' Regional or District Sales Managers who supervised, trained, or coached the territory manager(s) and/or sales representatives who detailed Plaintiff decedent's healthcare providers regarding Neurontin;
> 80. Frank D'Amelio, Sr. VP and Chief Financial Officer, Pfizer, Inc.;
> 81. William Ringo, Sr. VP, Strategy and Business Development, Pfizer, Inc.;
> 82. Martin Mackay, President, Pfizer Global Research & Development, Pfizer;
> 83. Amy Schulman, Officer, Pfizer, Inc.;
> 84. David Madigan, PhD, Professor of Statistics, Columbia University;
> 85. Javier Cabrera, PhD, Professor of Statistics, Rutgers University;
> 85. [sic] Sharon-Lise T. Normand, PhD, Professor of Biostatistics, Harvard School of Public Health;
> 86. David Kessler, former FDA Commissioner, 505 Parnassus Avenue, San Francisco, CA 94143;
> 88. Sandy Beaty, Pfizer Inc., 3200 W. End Ave. #500, Nashville, TN 37203-1322;
> 89. Corporate representative, Pfizer Inc., 3200 W. End Ave. #500, Nashville, TN 37203-1322; and
> 90. Corporate representative, Pfizer Inc., 1865 Shelby Oaks Drive, Memphis, TN 38134-7401.

---

[2] The defendants claim that the supplemental disclosure also contained previously undisclosed documents. (Docket No. 61 at 2.) The defendants do not specifically identify these documents, however, and the plaintiff represents that all of the documents listed in the January 2010 disclosure were included in previous disclosures.

4

(Docket No. 65 at 3 (quoting Docket No. 62, Ex. 4 at 6, 8-9).) The court will refer to these as the "Group One" witnesses.

The second group consists of 30 witnesses who were family or friends of Smith. These include Smith's cousins, Smith's nephews, people affiliated with various churches, and Smith's former co-workers at Nashville Machines. (*Id.* at 3-4.) The court will refer to these as the "Group Two" witnesses.[3]

## ANALYSIS

Although styled as a Motion to Strike, the defendants' motion essentially seeks to exclude, pursuant to Federal Rule of Civil Procedure 37, the witnesses who were listed for the first time in the plaintiff's most recent supplemental Rule 26 disclosure. The defendants do not challenge the timeliness of any of the plaintiff's earlier disclosures.

**I.    Rules Regarding Mandatory Disclosures**

Federal Rule of Civil Procedure 26 requires parties to make certain mandatory disclosures during the initial stages of litigation. Generally, a party must, "without awaiting a discovery request," provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Usually, the parties must make these

---

[3] The identities of the Group One and Group Two witnesses are taken from the plaintiff's memorandum. The defendants do not provide a list of newly disclosed witnesses. The defendants do complain that Pfizer CEO Jeffrey Kindler is a previously undisclosed witness, but Kindler was actually included in the plaintiff's August 5, 2009 disclosure. (Docket No. 66, Ex. 5 at 7.)

5

disclosures within 14 days after the initial case management conference. *Id.* 26(a)(1)(C). Thereafter, a party "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* 26(e)(1)(A). Thus, "[a]s case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use." Fed. R. Civ. P. 26(a)(1) advisory committee's note (2000).

Parties must also make certain disclosures before trial. Specifically, a party must provide "information about the evidence that it may present at trial other than solely for impeachment," including "the name and, if not previously provided, the address and telephone number of each witness – separately identifying those the party expects to present and those it may call if the need arises." *Id.* 26(a)(3)(A)(i). "Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."[4] *Id.* 26(a)(3)(B).

Rule 37 provides sanctions for a party's failure to make the required disclosures. "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." *Id.* 37(c)(1). "In addition to or instead of" excluding witnesses, the court may (1) order payment of the reasonable expenses caused by the failure, (2) inform the jury of the

---

[4] This court has ordered that witness lists in the instant case be filed by April 27, 2010, which is two weeks before commencement of the trial. (Docket No. 38 at 1.)

6

failure, or (3) impose "other appropriate sanctions." *Id.* 37(c)(1)(A)-(C).

The Sixth Circuit has clarified that "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quotation marks and citation omitted).  In other words, "'the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *Id.* (quoting *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).  The burden is on the potentially sanctioned party to show that its omissions were substantially justified or harmless.  *Id.*

**II.     Substantial Justification**

The plaintiff argues that she was substantially justified in waiting years to identify these potential witnesses because the parties agreed that they would disclose trial witnesses 60 days before trial.  As the plaintiff states in her memorandum: "Plaintiff's position is that Defendants knew that additional witnesses would be identified, and Defendants knew that they would have an opportunity to take depositions of any additional fact witnesses within at least 60 days before trial." (Docket No. 65 at 6.)  But this mischaracterizes the parties' agreement.

The parties did, in September 2007, agree to "disclose the names of the witnesses they intend to call at trial sixty (60) days prior to the start of trial."  (Docket No. 62, Ex. 6 at 1.)  But this agreement came under the heading, "THE 450 INDIVIDUALS LISTED ON PLAINTIFF RUTH SMITH'S RULE 26(a) DISCLOSURES." (*Id.*)  The agreement specifically related to the

7

mass of unorganized names that the plaintiff had provided in its May 21, 2007 letter. This is consistent with earlier correspondence from the defendants' counsel, which explained that the defendants were concerned with avoiding the "unnecessary time and expense of deposing all of the witnesses on the [May 21, 2007] List." (*Id.*, Ex. 5.)

Thus, the agreement was *not* that either party could reveal additional, previously undisclosed witnesses 60 days before trial. It was that the plaintiff would narrow her already massive list of Nashville-based witnesses, which presumably included Smith's relevant family members, friends, and acquaintances. On its face, the parties' agreement did not excuse the plaintiff from her obligation under Rule 26(e) to supplement her disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Under the plaintiff's reading of her agreement, she could conceal the identities of any and all additional witnesses until 60 days before trial, springing the witnesses on the defendants at the last minute. If this is a proper reading, it is puzzling why she filed any supplemental witness disclosures after the September 2007 agreement.

The plaintiff does not offer any other legitimate justification for delaying the disclosure of these witnesses.[5] She does not argue that she did not know the identity of the witnesses before January 2010. Obviously, she knew Smith's family and friends. As for the Group One witnesses, fact discovery in this case closed on July 1, 2008. (Docket No. 62, Ex. 7 at 1.) The plaintiff does not claim that she learned the identity of these witnesses after that date.

The plaintiff points out that she stated in her initial Rule 26 disclosure that "friends and

---

[5] The plaintiff points out that both parties filed supplemental disclosures in 2009 and that the defendant did not object to the timeliness of the plaintiff's 2009 disclosures. (Docket No. 65 at 7-8.) This has no bearing, however, on whether the January 21, 2010 disclosure is untimely.

8

family of the deceased" possessed discoverable information.  (*See id.*, Ex. 1 at 2.)  Similarly, her previous supplemental disclosures identified general categories of the defendants' employees. (*E.g.*, *id.*, Ex. 8 at 2 (listing "[d]efendants' employees and representatives with knowledge as to the sale, promotion and/or marketing of Neurontin").)  But these broad categories of witnesses do not satisfy the disclosure requirements of Rule 26.  The rule requires parties to disclose "*the name* . . . of each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).  "It is not sufficient to identify [witnesses] through the use of a collective description, such as 'employees or representatives of the defendant.'"  6 *Moore's Federal Practice*, § 26.22[4][a][i] (3d. ed.) (citing *Hernandez-Torres v. Intercontinental Trading*, 158 F.3d 43, 49-50 (1st Cir. 1998)); *see also Labadie v. Dennis*, No. 1:07-cv-480, 2008 U.S. Dist. LEXIS 103754, at *6 (W.D. Mich. Dec. 23, 2008) ("Plaintiff lists generic categories of persons, such as 'all members of plaintiff's family,' or 'all investigating persons.'  This is patently insufficient and amounts to a non-disclosure.").  The plaintiff's noncompliance with Rule 26 is not excused by her earlier disclosure of these broad, generic categories of witnesses.

The court concludes that the plaintiff was not substantially justified in waiting to identify the witnesses until less than four months before trial.

### III.    Harmlessness

The plaintiff also argues that her failure to disclose these witnesses was harmless because the defendants already knew their identity.

The Sixth Circuit has explained that harmlessness, not prejudice, "is the key under Rule 37."  *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003).  "The advisory committee's note to

9

Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Id.* (quotation marks and citation omitted). Here, the plaintiff does not appear to be operating in bad faith, so the court will treat her misreading of the parties' agreement as an honest mistake.

Thus, the harmlessness analysis turns on the defendants' knowledge of the witnesses. There is no duty to supplement a Rule 26 disclosure if the information "has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." Fed. R. Civ. P. 26(e) advisory committee's note (1993).

With regard to the Group Two witnesses, the plaintiff points out that the defendants elicited those names during their deposition of the plaintiff, Ruth Smith. Specifically, the defendants questioned her about the pastor of the church she and her husband attended, and she gave his name, testifying that they "weren't real personal friends." (Docket No. 66, Ex. 8 at 194.) The defendants elicited the rest of the names by reading through Richard Smith's obituary and asking the plaintiff to identify the various pallbearers and honorary pallbearers. (*See id.* at 221-26.) For example:

> Q. Ron Carter?
>
> A. Ron was a cousin by marriage – a nephew by marriage. Kansas.
>
> Q. Bill Duffy?
>
> A. He's another nephew in Atlanta.
>
> Q. John Brown?

10

>A. That's my nephew. . . .
>
>Q. Phil Cullom, C-U-L-L-O-M?
>
>A. Another longtime friend.
>
>Q. There are Roehrigs, Bill, Bryan and David.
>
>A. They were part of the Nashville Office Machines.

(*Id.* at 224-25.)

The plaintiff argues that, based on this deposition testimony, the "[d]efendants were well aware of these individuals, [and] they had every opportunity to notice depositions of these individuals." (Docket No. 65 at 8-9.) It is true that the defendants learned, for example, that Smith had a nephew in Atlanta named Bill Duffy. But the defendants did *not* learn that Duffy was a potential witness or that he possessed information relevant to the case. Ruth Smith's deposition testimony did not make it clear that any of these people could, or would, be offered as witnesses by the plaintiff. There is a difference between (1) knowing that a certain individual exists, and (2) knowing that the individual has information relevant to a lawsuit. Only the latter instance excuses an adverse party's Rule 26(e) obligations.

The defendants cannot be expected to divine which of Smith's many friends and family members have relevant information, particularly if those people have been omitted from the plaintiff's list of 450 potential witnesses. It is unrealistic to think that the defendants would, or should, depose a person simply because he or she was listed in Smith's obituary. The defendants did not know that these people were witnesses, so the late disclosure of the Group Two witnesses is not harmless.

11

As for the Group One witnesses, however, the defendants did have knowledge regarding the information possessed by their own employees and representatives. In addition, many of the Group One witnesses were previously listed in Rule 26 disclosures in related MDL cases – in *Shearer v. Pfizer, Inc.*, D. Mass. No. 07-cv-11428, the plaintiff's counsel served Rule 26 disclosures on the defendants' counsel that identified witnesses Frank Amelio, William Ringo, Martin Mackay, David Madigan, Javier Cabrera, and Sharon-Lise Normand. (Docket No. 66, Ex. 10 at 5-6, Ex. 11 at 3.) The lawyers in the *Shearer* case are the same as in the instant case, and it is clear that these witnesses relate to all of the Neurontin products liability cases. David Kessler, the former FDA commissioner, is the only Group One witness who was not previously disclosed to or known by the defendants. Thus, the late disclosure of all Group One witnesses, aside from Kessler, was harmless.

The court finds that excluding Kessler and the Group Two witnesses from testifying at trial is a proper sanction here.[6] The purpose of the "automatic sanction [of exclusion]" is to "provide[] a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37(c) advisory committee's note (1993). This sanction "is

---

[6] The plaintiff cites to *Concrete Materials Corp. v. C.J. Mahan Construction Co.*, No. 95-6657, 1997 U.S. App. LEXIS 6218 (6th Cir. Mar. 28, 1997), but that case is inapposite. There, the defendant "never established, or attempted to establish, that the information that [the plaintiff] failed to produce [came] within . . . Rule 26(a)." *Id.* at *10. Here, it is indisputable that identities of witnesses fall within Rule 26(a). Also, in *Concrete Materials Corp.*, the court found it significant that the defendant never filed a motion to compel the plaintiff to supplement its incomplete discovery responses. *Id.* at *10-11. Here, in contrast, it is nonsensical to argue that Pfizer should have moved to compel the disclosure of witnesses who were unknown to Pfizer.

certainly appropriate when the failure to abide by the requirements of Rule 26 is not substantially justified or harmless." *Campos v. MTD Prods.*, No. 2:07-CV-00029, 2009 U.S. Dist. LEXIS 63846, at *26 (M.D. Tenn. July 24, 2009).

## CONCLUSION

For all of the reasons discussed above, the court will grant in part and deny in part the defendants' Motion to Strike. Because the plaintiff failed to meet her Rule 26(e) obligation to file timely supplemental disclosures, the court will exclude Kessler and the Group Two witnesses from testifying at trial.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

13