IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RUTH SMITH, Individually and as Widow for the
Use and Benefit of Herself and the Next Kin of
Richard Smith, Deceased,

        Plaintiff,

v.

PFIZER, INC., *et al.*,

        Defendants.

)
)
)
)
)  Civil No. 3:05-0444
)  Judge Aleta A. Trauger
)  (Dist. Of MA No.
)  1:05-cv-11515PBS)
)
)
)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF OR
REFERENCES TO CONDUCT UNRELATED TO NEURONTIN**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ..................................................................................................... 3

I.   THE AUGUST 2009 SETTLEMENT REPRESENTS A COMPROMISE OF
     DISPUTED CLAIMS, INADMISSIBLE UNDER RULE 408 ......................... 3

II.  THE AUGUST 2009 SETTLEMENT AND PHARMACIA PLEA ARE NOT
     RELEVANT TO ANY ISSUE IN THIS LITIGATION AND CONTAIN
     INADMISSIBLE HEARSAY ........................................................................ 4

     A.   Allegations Made In Litigation Involving Other Products Are Irrelevant
          and Inadmissible Hearsay ..................................................................... 4

     B.   The Evidence Should Be Excluded As Unfairly Prejudicial ................... 6

III. INTRODUCTION OF THE CRIMINAL PLEA IS IRRECONCILABLE WITH
     THE SUPREME COURT'S DECISIONS IN *CAMPBELL* AND *PHILIP
     MORRIS* AND WILL RESULT IN A VIOLATION OF DEFENDANTS' DUE
     PROCESS RIGHTS ................................................................................... 8

IV.  THE AUGUST 2009 SETTLEMENT AND PHARMACIA PLEA
     CONSTITUTE IMPROPER CHARACTER PROPENSITY EVIDENCE ........ 13

V.   THE AUGUST 2009 SETTLEMENT AND PHARMACIA PLEA ARE NOT
     ADMISSIBLE AS IMPEACHMENT EVIDENCE ......................................... 15

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*BMW of North America, Inc. v. Gore,*
517 U.S. 559 (1996) ................................................................................... 11

*Bach v. First Union National Bank,*
486 F.3d 150 (6th Cir. 2007) ....................................................................... 13

*Barnes v. Koppers, Inc.,*
No. 3:03CU60-P-D, 2006 WL 940279 (N.D. Miss. Apr. 11, 2006) ................ 5

*Becker v. ARCO Chemical Co.,*
207 F.3d 176 (3d Cir. 2000) .................................................................... 14, 15

*Bridgeport Music v. Combs,*
507 F.3d 470 (6th Cir. 2007), *cert. denied,* 129 S. Ct. 85 (2008) ................. 3

*Cappello v. Duncan Aircraft Sales of Florida, Inc.,*
79 F.3d 1465 (6th Cir. 1996) ........................................................................ 3

*Coleman Motor Co. v. Chrysler Corp.,*
525 F.2d 1338 (3d Cir. 1975) ........................................................................ 7

*Cosgrove ex rel. Winfree v. Merrell Dow Pharmaceuticals., Inc.,*
117 Idaho 470, 788 P.2d 1293 (Idaho 1989) ................................................ 5

*Coursen v. A.H. Robins Co.,*
764 F.2d 1329 (9th Cir.), *corrected,* 773 F.2d 1049 (9th Cir. 1985) ............. 6

*Crawford v. Yellow Cab Co.,*
572 F. Supp. 1205 (N.D. Ill. 1983) ............................................................. 14

*Diaz v. Cianci,*
737 F.2d 138, 139-40 (1st Cir. 1984) ......................................................... 7, 8

*Durham v. Vinson,*
360 S.C. 639, 602 S.E.2d 760 (S.C. 2004) ................................................. 11

*Estate of Embry v. GEO Transport of Indiana, Inc.,*
478 F. Supp. 2d 914 (E.D. Ky. 2007) ......................................................... 11

*Fisher v. American General Finance Co.,*
52 Fed. App'x 601 (4th Cir. 2002) ............................................................. 14

*Gil de Rebollo v. Miami Heat Ass'ns,*
    137 F.3d 56, 64 (1st Cir. 1998) .................................................................. 7

*Gober v. Ralphs Grocery Co.,*
    137 Cal. App. 4th 204, 40 Cal. Rptr. 3d 92 (2006) .......................... 12

*Goodyear Tire & Rubber v. Chiles Power Supply,*
    332 F.3d 976 (6th Cir. 2003) ................................................... *passim*

*Grant Thornton, LLP v. FDIC,*
    Nos. CIV. A. 1:00-655, 2007 WL 518421 (S.D. W.Va. Feb. 13, 2007) ............. 6

*Greycas Inc. v. Proud,*
    826 F.2d 1560 (7th Cir. 1987) ................................................................... 5

*Holdgrafer v. Unocal Corp.,*
    160 Cal. App. 4th 907, 73 Cal. Rptr. 3d 216 (2008) ...................... 11

*IGEN International, Inc. v. Roche Diagnostics GmbH,*
    335 F.3d 303 (4th Cir. 2003) ................................................................... 10

*International Shoe Machine Corp. v. United Shoe Machine Corp.,*
    315 F.2d 449 (1st Cir. 1963) ................................................................... 7

*Jankins v. TDC Management Corp.,*
    21 F.3d 436 (D.C. Cir. 1994) ................................................................... 14

*Ky. Farm Bureau Mutual Insurance Co. v. Rodgers,*
    179 S.W.3d 815 (Ky. 2005) ................................................................... 11

*Lanham v. Whitfield,*
    805 F.2d 970 (11th Cir. 1986) ................................................................... 6

*Lewy v. Remington Arms Co.,*
    836 F.2d 1104 (8th Cir. 1988) ................................................................... 5

*Lindsey v. Normet,*
    405 U.S. 56 (1972) ................................................................... 6

*McInnis v. A.N.F., Inc.,*
    765 F.2d 240 (1st Cir. 1985) ................................................................... 3, 4

*McLeod v. Parsons Corp.,*
    73 Fed. App'x 846 (6th Cir. 2003) ................................................ 5, 14, 15

*Olson v. Ford Motor Co.,*

      481 F.3d 619 (8th Cir. 2007) ................................................................6

*Pedroza v. Lomas Automobile Mall, Inc.,*
      No. 07-0591, 2009 WL 1300944 (D.N.M. Apr. 2, 2009)................................12

*Philip Morris USA v. Williams,*
      549 U.S. 346 (2007) ...........................................................2, 9, 11, 12

*Richardson v. Tricom Pictures & Products, Inc.,*
      334 F. Supp. 2d 1303 (S.D. Fla. 2004), *aff'd*, 183 Fed. App'x 872 (11th Cir. 2006) ........11

*Rush v. Illinois Central Railroad Co.,*
      399 F.3d 705 (6th Cir. 2005) ..............................................................16

*Saldana Sanchez v. Vega Sosa,*
      175 F.3d 35 (1st Cir. 1999)................................................................13

*Shugart v. OEA, Inc.,*
      No. A099649, 2005 WL 1503812 (Cal. Ct. App. June 27, 2005),
      *aff'd,* 566 F.3d 915 (9th Cir. 2009)......................................................10

*State Farm Mutual Automobile Insurance Co. v. Campbell,*
      538 U.S. 408 (2003), *aff'd*, 2008 WL 4411656 (Cal. App. Sept. 30, 2008) .......8, 9, 10, 12

*Stockman v. Oakcrest Dental Ctr., P.C.,*
      480 F.3d 791 (6th Cir. 2007) ............................................................4, 7

*Stroud v. Abington Memorial Hospital,*
      546 F. Supp. 2d 238 (E.D. Pa. 2008)....................................................10

*United States v. Solorio-Soto,*
      300 Fed. App'x 487 (9th Cir. 2008) ....................................................13

*United States Football League v. National Football League,*
      634 F. Supp. 1155 (S.D.N.Y. 1986) ......................................................7

*Utz v. Johnson,*
      No. 04-CV-0437, 2004 WL 2812050 (E.D. Pa. Dec. 8, 2004) .........................11

*Walden v. Georgia-Pacific Corp.,*
      126 F.3d 506 (3d Cir. 1997)..............................................................15

*Williams v. Drake,*
      146 F.3d 44 (1st Cir. 1998)................................................................7

*Wohlwend v. Edwards,*
 796 N.E.2d 781 (Ind. App. 2003) ..................................................................... 12

## STATUTES

Fed. R. Evid. 404(b) ..............................................................................2, 13, 14, 15

Fed. R. Evid. 408 ............................................................................................... 7

Fed. R. Evid. 408(a)(2) ........................................................................................ 4

Fed. R. Evid. 613 ............................................................................................... 16

## OTHER AUTHORITIES

1 Wigmore, *Evidence* § 57 (3d ed. 1940) ................................................................ 7

Pursuant to Federal Rules of Evidence 401, 402, 403, 404, and 408, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer"), respectfully submit this memorandum of law in support of their accompanying motion *in limine* to exclude at trial any and all evidence of or reference by Plaintiff or her counsel before the jury to conduct unrelated to Neurontin, including (i) an August 31, 2009, settlement among Pfizer, the United States Department of Justice, and certain other government agencies (collectively, the "Government"), pursuant to which Pfizer and the Government agreed to settle certain *qui tam* actions against Pfizer involving drugs other than Neurontin (the "August 2009 Settlement") and (ii) a plea agreement between the Government and Pharmacia & Upjohn Company, Inc. (a company that is not a party to this litigation) involving the drug Bextra (the "Pharmacia Plea"), as well as any related government finding or investigation in connection with the August 2009 Settlement or the Pharmacia Plea.

## PRELIMINARY STATEMENT

On August 31, 2009, Pfizer entered into a Settlement Agreement with the Government pursuant to which Pfizer and the Government agreed to settle certain *qui tam* actions against Pfizer which involved the following drugs and time periods: (1) Bextra (February 1, 2002, through April 30, 2005); (2) Geodon (January 1, 2001, through December 31, 2007); (3) Zyvox (January 1, 2001, through February 28, 2008); (4) Lyrica (September 1, 2005, through October 31, 2008). (*See* Ex. A, August 2009 Settlement.)[1] The August 2009 Settlement also resolved claims arising out of allegations that Pfizer paid illegal remuneration to health care professionals in connection with the drugs Aricept, Celebrex, Lipitor, Norvasc, Relpax, Viagra, Zithromax, Zoloft and Zyrtec. (*Id.* at 3-5.)

Neither the August 2009 Settlement nor the Pharmacia Plea involved Neurontin, and none of the Defendants in this case pled guilty to any charges in connection with the settlement or related investigations. The only guilty plea entered in connection with the settlement was by a

---

[1] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

Pfizer subsidiary, Pharmacia & Upjohn Company, Inc., to one count of violating federal law involving the promotion of the drug Bextra. (*Id.* at 2; Ex. B, Pharmacia Plea.)

The Supreme Court has made clear that liability cannot be imposed based upon conduct that did not cause harm to a plaintiff. To punish a defendant based upon harm to persons "not before the court . . . would amount to a taking of 'property' from the defendant without due process." *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007). The only conceivable reason Plaintiff would seek to place the August 2009 Settlement or Pharmacia Plea before the jury is to invite the jury to decide the case based not on the facts and the law at issue, but instead on a visceral reaction to conduct that is wholly irrelevant to the issues in this litigation. The Supreme Court has made clear that courts should not countenance desultory attempts to find a relevance hook that only obscures the real – and impermissible – purpose for which such evidence is offered: to induce the jury to punish a defendant for conduct that is not before them.

Evidence related to the August 2009 Settlement and Pharmacia Plea, as well as any related litigation or government investigation, is inadmissible for several reasons. First, introduction of the August 2009 Settlement is precluded by Federal Rule of Evidence 408. Second, the August 2009 Settlement and Pharmacia Plea are wholly irrelevant to the claims in this case under Rules 401 and 402 and their introduction would cause substantial unfair prejudice to Pfizer, requiring their exclusion under Rule 403. Third, introduction of the August 2009 Settlement and Pharmacia Plea would violate Pfizer's due process rights. Fourth, given the lack of relevance of this evidence to Plaintiff's claims, the only plausible reason that Plaintiff might have for introducing it would be as improper character evidence to attempt to establish that Pfizer is a "bad actor." Rule 404(b) flatly prohibits this. Finally, the August 2009 Settlement and Pharmacia Plea are not admissible as impeachment evidence.

Accordingly, as set forth in greater detail below, the Court should preclude Plaintiff from introducing or otherwise referencing the August 2009 Settlement or Pharmacia Plea before the jury.

2

# ARGUMENT

## I. THE AUGUST 2009 SETTLEMENT REPRESENTS A COMPROMISE OF DISPUTED CLAIMS, INADMISSIBLE UNDER RULE 408

The August 2009 Settlement makes clear that it is a "compromise of disputed claims" and not an admission of facts or liability by Pfizer. (August 2009 Settlement at 5-6.)[2] As such, the August 2009 Settlement is inadmissible under Federal Rule of Evidence 408, which precludes the admission of any agreement of compromise, or offer to compromise, to prove liability for the claim that is the subject of the compromise. The Sixth Circuit has recognized that the key purposes underlying Rule 408 are the public policy in favor of facilitating settlements, *see Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 478 (6th Cir. 2007), and that settlement offers are an inherently unreliable source of evidence considering that settlement "may be motivated by a desire for peace rather than from any concession of weakness of position." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003) (quoting Fed. R. Evid. 408, advisory committee notes); *see also McInnis v. A.N.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985) (noting that exclusion of settlement evidence is justified because it "promote[s] a public policy favoring the compromise and settlement of claims by insulating potential litigants from later being penalized in court for their attempts to first resolve their dispute out of court" and because the "evidence is of questionable relevance . . . since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions.").

Significantly, the Sixth Circuit has made clear that Rule 408 applies to completed offers of settlement arising out of other transactions with other parties. *See Cappello v. Duncan Aircraft Sales*, 79 F.3d 1465, 1476 (6th Cir. 1996) (finding that evidence of settlements with other passengers in an airplane crash was inadmissible under both Rule 408 and Tennessee civil

---

[2] The only admissions made in connection with the August 2009 Settlement Agreement are those related to the Pharmacia Plea regarding Bextra and certain admissions regarding the antibacterial agent Zyvox. Such provisions of the Settlement Agreement are independently inadmissible for the additional reasons set forth in this memorandum.

procedure) (citing *McInnis*, 765 F.2d 240)). No plausible argument could be advanced for admitting a settlement involving other drugs, when it is clear that evidence of a settlement involving Neurontin would be inadmissible. "[T]he relevance of the settlement to the validity of the claim cannot logically be considered stronger in the former instance than in the latter." *McInnis*, 765 F.2d at 247.[3]

In this case, the only purpose for which Plaintiff could seek to offer the August 2009 Settlement is to show that Pfizer engaged in off-label marketing of other drugs. In other words, Plaintiff would offer the evidence precisely for the purpose prohibited by Rule 408. Because the August 2009 Settlement does not involve Neurontin, Plaintiff cannot conceivably bring the evidence within one of the exceptions provided in Rule 408. Admission of a settlement agreement in violation of Rule 408 constitutes prejudicial error warranting a new trial. *See Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 800 (6th Cir. 2007) (finding prejudicial error in district court's admission of settlement evidence because the prejudice inherent in settlement evidence "is patently virulent"); *see also McInnis*, 765 F.2d at 252 ("[I]t is doubtful that any instructions, no matter how clear and comprehensive, could eradicate the prejudice engendered by the admission of the release in this case.").

## II. THE AUGUST 2009 SETTLEMENT AND PHARMACIA PLEA ARE NOT RELEVANT TO ANY ISSUE IN THIS LITIGATION AND CONTAIN INADMISSIBLE HEARSAY

### A. Allegations Made In Litigation Involving Other Products Are Irrelevant and Inadmissible Hearsay

Recognizing that allegations made in other lawsuits are just that – allegations – courts routinely exclude such evidence. Allegations made in other litigation (even if recited as background in a settlement agreement) constitute inadmissible hearsay. The only purpose for

---

[3] Rule 408 also precludes any admissions of fact made in connection with a settlement. *See* Fed. R. Evid. 408(a)(2); *Goodyear Tire*, 332 F.3d at 981 (finding a settlement privilege due to "public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein"). Thus, the limited admissions contained within the August 2009 Settlement (*see supra* note 2) are expressly included within Rule 408's prohibition.

4

which such evidence could be offered would be to prove the truth of the matter asserted (that Pfizer or its subsidiaries engaged in the conduct alleged) and, therefore the allegations are hearsay for which there is no exception. *See Boston Beverage Corp. v. Turner*, 81 B.R. 738, 747 (D. Mass. 1987) (pleadings from other cases were hearsay if offered to prove the truth of the allegations contained therein); *Guild v. GMC*, 53 F. Supp. 2d 363, 368 (W.D.N.Y. 1999) (finding customer complaints to be inadmissible hearsay); *Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 620 (D.N.J. 1982) (even assuming relevance, consumer complaints to manufacturer were inadmissible hearsay).[4]

Accordingly, references to other litigation involving Neurontin would be inadmissible. Evidence of or reference to legal proceedings involving pharmaceutical products ***other than Neurontin*** is even further removed from the facts of the present case and must be excluded. *See, e.g., Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1109 (8th Cir. 1988). Even further, these allegations from other litigation involving other products relate only to off-label promotion – they do not even address the crucial issues in this case of whether Neurontin causes suicidal behavior, whether, at the time Neurontin was prescribed to Mr. Smith, Neurontin's label contained adequate warnings, whether Mr. Smith was taking Neurontin at the time of his death, and whether Mr. Smith's decision to take his own life resulted from his alleged use of Neurontin. Such evidence serves only to impugn Pfizer's character, without consideration of the merits of the other litigation. *See McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's decision to exclude as irrelevant evidence of other unrelated lawsuits against defendant); *Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *3 (N.D. Miss. Apr. 11, 2006) (holding that "evidence of other lawsuits, claims, and injuries" even in same area was "irrelevant to this case and therefore inadmissible"); *Cosgrove ex rel Winfree v. Merrell Dow Pharms., Inc.*, 788 P.2d 1293, 1296 (Idaho 1989) (upholding exclusion of evidence

---

[4] In fact, even if another lawsuit is tried and the jury finds for the plaintiff, the jury verdict is inadmissible hearsay. *See Greycas Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987); *Colonial Refrigerated Transp., Inc. v. Mitchell*, 403 F.2d 541, 551 (5th Cir. 1968).

regarding pharmaceutical company's other products, offered to show a habit of fraud or deceit, since it was not probative or relevant to the issues before the court and jury in the case).

**B.    The Evidence Should Be Excluded As Unfairly Prejudicial**

Evidence of allegations concerning other products could not be admitted without affording Pfizer an opportunity to rebut it, which would inevitably lead to mini-trials on irrelevant transactions and jury confusion. *See Olson v. Ford Motor Co.*, 481 F.3d 619, 624 (8th Cir. 2007) ("No judge wants to see one trial turn into several . . . ."); *Lanham v. Whitfield*, 805 F.2d 970, 972 (11th Cir. 1986) (holding that trial court properly refused to admit evidence of unrelated litigation under Rule 403 because the probative value, if any, of such evidence was outweighed by the fact that it would create "considerable" prejudice for the defendant and could result in "confusion of the issues" and "mislead[] the jury"); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1334 (9th Cir.) (affirming trial court's exclusion of evidence on collateral issues on the grounds that any relevance was outweighed by the risk that the jury would be confused and distracted from the main issues), *corrected*, 773 F.2d 1049 (9th Cir. 1985) (correcting typographical error); *Grant Thornton, LLP v. FDIC*, No. 1:00-655, 2007 WL 518421, at *1 (S.D. W.Va. Feb. 13, 2007) ("Allowing evidence of other litigation [against plaintiff] would not only cause the issues of the current case to be delayed . . . but would confuse the issues by introducing twelve additional fact situations which would have to be dealt with individually before a decision on the merits of the current case could be reached.").

Indeed, there is no way for Pfizer to meaningfully rebut allegations wholly unrelated to Neurontin without compromising its ability to defend against Plaintiff's Neurontin claims. The federal investigation was lengthy (over five years) and complex. There is simply no way to adequately address the issues related to the August 2009 Settlement and Pharmacia Plea in a way that would be both fair and would not overwhelm the jury. As a result, the admission of such evidence would result in a denial of Pfizer's due process right to defend itself. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("'Due process requires that there be an opportunity to present every available defense.'" (citation omitted)).

Further, any tangential relevance that Plaintiff may attempt to conjure up for introducing a criminal plea made by a company that is not a party to the instant lawsuit, concerning a product other than Neurontin, is greatly outweighed by the potential for prejudice and juror confusion. The Sixth Circuit has indicated that – in addition to the restrictions of Rule 408 – settlement evidence should be excluded as unfairly prejudicial under Rule 403. *Stockman*, 480 F.3d at 799. This is because "the probative value [is] nearly non-existent" and there is great risk that the jury will misunderstand the August 2009 Settlement as "an implicit admission of liability or a sign that Defendants thought they might lose at trial." *Id.*; *see also Goodyear Tire*, 332 F.3d at 983 (noting that settlement "may be motivated by a desire for peace rather than from any concession of weakness of position" (quoting Fed. R. Evid. 408, advisory committee notes)). Likewise, the introduction of the Pharmacia Plea – notwithstanding the irrelevance of those violations to the facts and claims in the instant dispute – would almost certainly increase the likelihood that a jury in this case would reach a decision based not on the facts properly before them, but on the basis of the guilty plea. Courts and commentators have acknowledged the enormous potential for prejudice in these circumstances.

> [E]vidence of a judicial determination of prior illegal conduct on the part of the defendant cannot help but have a great emotive impact on a jury. As Wigmore states: "'The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in or [out] of court.'"

*Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963) (quoting 1 Wigmore, Evidence, § 57 (3d ed. 1940)). Where, as here, the jury is unlikely to understand the limited scope of the plea, the risk is even greater. *See Williams v. Drake*, 146 F.3d 44, 48-49 (1st Cir. 1998) (affirming, in related civil suit, the exclusion of a guilty plea previously entered by plaintiff before a prison disciplinary board); *Gil de Rebollo v. Miami Heat Ass'ns*, 137 F.3d 56, 64 (1st Cir. 1998) (approving trial court's exclusion of conviction from plaintiff's subsequent civil action because, "admission of [defendant's] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own"); *Diaz v. Cianci*,

737 F.2d 138, 139-40 (1st Cir. 1984) (affirming exclusion, in related civil suit, of evidence of plaintiff's conviction for assaulting police officer during the same event because of danger of unfair prejudice); *see also Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) ("A jury is likely to give a prior verdict against the same defendant more weight than it warrants."); *United States Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986) (holding that introduction of prior judgments "would permit plaintiffs to create an 'aura of guilt' or to 'imply new wrongdoing from past wrongdoing'").

Here, the potential for juror confusion and prejudice is profound. First, as previously noted, the Pharmacia Plea concerns a product other than Neurontin. Second, the party entering into the Pharmacia Plea is not a defendant in this litigation. Its only connection with Warner-Lambert is that both companies were acquired at some point by Pfizer.

Even if this Court were to find that Warner-Lambert's plea[5] was admissible, which it is not, any such ruling would have no application to the Pharmacia Plea, which does not even concern Neurontin. Indeed, courts, including the Supreme Court, have rejected attempts to justify introduction of prejudicial evidence of alleged conduct that did not cause harm to a plaintiff on the grounds that it was evidence of intent. For example, in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the Supreme Court rejected the plaintiffs' argument that the evidence at issue went to motive. *See id.* at 422. The plaintiffs argued that the evidence was probative of a general scheme to reduce the amount of money paid to claimants, both as a result of first-party and third-party claims. *See id.* at 423-24. Observing that liability should have been imposed only for the conduct that harmed the plaintiffs, the Supreme Court held that the trial court committed error when it allowed the plaintiffs to use the case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country." *Id.* at 420; *see also infra* Section III.

---

[5] Pfizer has separately moved to exclude the Warner-Lambert plea. In the event that such motion is denied, allowing the introduction of the August 2009 Settlement and Pharmacia Plea would result in an unconscionable degree of prejudice.

## III. INTRODUCTION OF THE CRIMINAL PLEA IS IRRECONCILABLE WITH THE SUPREME COURT'S DECISIONS IN *CAMPBELL* AND *PHILIP MORRIS* AND WILL RESULT IN A VIOLATION OF DEFENDANTS' DUE PROCESS RIGHTS

Introduction of a Settlement and a criminal plea that are wholly unrelated to Neurontin would also violate dictates of the Supreme Court's decisions in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Campbell*, 538 U.S. 408 (2003). In *Philip Morris*, the Supreme Court held, unequivocally, that punitive damages can be imposed only for conduct that *caused harm to the plaintiff*. As the Court stated: "[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." *Phillip Morris*, 549 U.S. at 353; *see also Campbell*, 538 U.S. at 424 ("The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance, which in this case extended for a 20-year period."). By extension, if the August 2009 Settlement and Pharmacia Plea cannot support *punitive* damages, the jury certainly cannot award compensatory damages based upon such conduct.

In *Campbell*, the Supreme Court held unconstitutional the Utah court's punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance." 538 U.S. at 424. Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct" since "nonparties are not bound by the judgment some other plaintiff obtains." *Id.* at 423. As the Supreme Court stated in *Campbell*, if punitive damages are to be justified on the grounds that the defendant is a "recidivist," "courts must ensure the conduct in question *replicates* the prior transgressions." *Id.* (emphasis added).

To allow Plaintiff to introduce evidence of the Pharmacia Plea on the issue of "reprehensibility" does not satisfy *Campbell*'s requirement that the conduct replicate the conduct directed at the plaintiff. Plaintiff is attempting to construct a daisy-chain of purported relevance

indistinguishable from that rejected by the Supreme Court in *Campbell*. There, the plaintiffs argued that the evidence of other conduct was probative of a general scheme to reduce the amount of money paid to claimants, both as a result of first party and third party claims. *See Campbell*, 538 U.S. at 423-24. Holding that liability should have been imposed only for the conduct that harmed the plaintiffs, the Supreme Court explained that the trial court committed error when it allowed the plaintiffs to use the case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country." *Id.* at 420.

For example, in *Shugart v. OEA, Inc.*, No. A099649, 2005 WL 1503812 (Cal. Ct. App. June 27, 2005), which involved a workplace explosion, the plaintiff sought to introduce evidence "that in 1994 defendant had been indicted on, and subsequently pled guilty to, six federal felony counts relating to 'two explosions involving explosive materials which injured several [of defendant's] employees.'" *Id.* at *16 (alteration in original). While noting that the plaintiff's vague description may have created the illusion of similarity, the court held that evidence of such prior incidents must be excluded under *Campbell. See id.* at *16-17. "To introduce evidence of the hazardous waste infractions during the proceedings at which the amount of punitive damages was set would have been to invite the jury to punish defendant for actions that 'bore no relation to the [plaintiff's] harm', in violation of due process." *Id.* at *17 (alteration in original) (citation omitted).

Numerous other courts have similarly rejected attempts by plaintiffs to link evidence of other conduct through claims of relevance that did not satisfy the stringent dictates of *Campbell. See, e.g., IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 313-14 (4th Cir. 2003) (holding that evidence that the defendant engaged in a scheme to put the plaintiff out of business could not support a punitive damage award under *Campbell* when the conduct alleged was independent of the acts upon which liability was based); *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 259 (E.D. Pa. 2008) (allegations of a cover-up, which were independent of the basis for imposing liability on the defendant, could not support punitive damages); *Estate of Embry v. GEO Transp. of Ind., Inc.*, 478 F. Supp. 2d 914, 922-23 (E.D. Ky. 2007) (excluding

evidence of dissimilar out-of-state conduct because it lacked any proximate relationship with the in-state harm and thus served "no deterrent purpose"); *Utz v. Johnson*, No. Civ. A. 04-CV-0437, 2004 WL 2812050, at *3 (E.D. Pa. Dec. 8, 2004) (excluding evidence of prior acts of verbal abuse in case alleging physical assault); *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1324 (S.D. Fla. 2004) (applying *Campbell* and holding that prior allegations of sexual harassment made against company employee involved dissimilar conduct and were irrelevant to determination of a punitive damages award against company), *aff'd*, 183 F. App'x 872 (11th Cir. 2006); *Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907, 927-29, 73 Cal. Rptr. 3d 216, 233-35 (2008) (evidence of other oil spills, which occurred under dissimilar circumstances, were inadmissible under *Campbell*); *Ky. Farm Bureau Mut. Ins. Co. v. Rodgers*, 179 S.W.3d 815, 819-20 (Ky. 2005) (holding that evidence of an insurance company's handling of another case was inadmissible under *Campbell*); *Durham v. Vinson*, 360 S.C. 639, 651-53, 602 S.E.2d 760, 766-67 (2004) (ordering new trial where court admitted in a malpractice action evidence that physician prescribed valium to plaintiff's daughter with instructions that she share them with other family members).

Further, in *Philip Morris*, the court explained that to allow punitive damages to be based upon harm to non-parties would violate due process by denying the defendant "'an opportunity to present every available defense.'" *Philip Morris*, 549 U.S. at 353-54 (citation omitted). The Supreme Court explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process "risks of arbitrariness, uncertainty and lack of notice." *Id.* at 354; *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (observing that a punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process).

In addition, much of the conduct that is at issue in the August 2009 Settlement and Pharmacia Plea occurred *after* the time during which Plaintiff alleges her injuries occurred and, therefore, is inadmissible under *Campbell*. *See Pedroza v. Lomas Auto Mall, Inc.*, No. 07-0591, 2009 WL 1300944, at *5 (D.N.M. Apr. 2, 2009); *Gober v. Ralphs Grocery Co.*, 137 Cal. App.

4th 204, 22, 40 Cal. Rptr. 3d 92, 106 (2006); *see also Campbell*, 538 U.S. at 410 (holding that "courts must ensure the conduct in question replicates the *prior* transgressions" (emphasis added)); *Wohlwend v. Edwards*, 796 N.E.2d 781, 787 (Ind. App. 2003).

All of the concerns expressed by the Supreme Court in *Philip Morris* and *Campbell* are present here. First, there is the very real risk that the jury will impose liability based upon conduct for which Defendants have already been punished. Second, allowing liability to be imposed based upon conduct that did not cause harm to Plaintiff is too standardless and arbitrary to comport with due process. Finally, requiring a defendant to defend against not only the plaintiff's case, but causally unconnected conduct stretching over a lengthy period of years imposes an impossible burden on a defendant, effectively depriving it of an opportunity to present a full and complete defense.

Moreover, it is a longstanding tenet of the law that a jury may not impose liability based upon the perceived character of the defendant or based upon a belief that a defendant had a propensity to act a certain way. Accordingly, the Federal Rules exclude character and propensity evidence. *See infra* Section IV. Again, the Supreme Court has explained that this issue transcends concerns of relevance and prejudice; it implicates fundamental due process rights of a defendant:

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . .

*Campbell*, 538 U.S. at 423. The due process concerns are magnified here where the evidence sought to be excluded is a criminal plea.

As the Supreme Court explained in *Philip Morris*, given the risk of unfairness, it is the trial court's responsibility to make sure that the jury answers "the right question, not the wrong one." *Philip Morris*, 549 U.S. at 355. Here, the jury will be asked to decide whether Neurontin causes suicidal behavior, whether Neurontin's label contained adequate warnings in 2004, whether Mr. Smith was taking Neurontin at the time of his death, and whether Mr. Smith's

12

decision to take his own life resulted from his alleged use of Neurontin or from his many other well-accepted suicide risk factors. The August 2009 Settlement and Pharmacia Plea will not help the jury answer those questions. Instead, Plaintiff hopes that the jury will be confused by such evidence so that it answers the wrong question. The only way to make sure that the jury answers the right question is to exclude the evidence. *See United States v. Solorio-Soto*, 300 F. App'x 487, 488 (9th Cir. 2008) (holding that limiting instruction that prior bad acts evidence of similar crimes could only be used to show whether charged offense was committed "knowingly" was insufficient to cure prejudice).

Finally, because this evidence cannot support *punitive* damages, the jury certainly cannot award compensatory damages based upon such conduct. All of the Supreme Court's concerns about the imposition of punitive damages based upon conduct that did not cause harm to the plaintiff apply with even greater force to Plaintiff's claims for compensatory damages. Indeed, it is hornbook law that compensatory damages must be based upon the harm caused to the plaintiff and not others. *See, e.g.*, *Bach v. First Union Nat'l Bank*, 486 F.3d 150, 153 (6th Cir. 2007); *Saldana Sanchez v. Vega Sosa*, 175 F.3d 35, 36 (1st Cir. 1999). Accordingly, evidence of the August 2009 Settlement and Pharmacia Plea must be excluded.

## IV. THE AUGUST 2009 SETTLEMENT AND PHARMACIA PLEA CONSTITUTE IMPROPER CHARACTER PROPENSITY EVIDENCE

The August 2009 Settlement and Pharmacia Plea should also be excluded under Rule 404(b) as improper character propensity evidence. Given that the August 2009 Settlement and Pharmacia Plea do not even concern Neurontin, none of the exceptions to the prohibition against evidence of prior bad acts apply in this case. The Sixth Circuit has held that a proponent of prior bad acts evidence must establish four requirements:

> (1) the evidence must be directed toward establishing something other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and that the party in question committed it; and (4) the prejudicial effect of the evidence must not clearly outweigh its probative value.

*McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (citations omitted). As demonstrated above, the Pharmacia Plea is irrelevant to this dispute and will cause unfair prejudice. Because the Pharmacia Plea has no relevance to Neurontin, the only possible use of the Pharmacia Plea is to show a propensity for improper conduct, which is specifically precluded by Rule 404(b). *Id.*

Plaintiff may try to fit the Pharmacia Plea within one of Rule 404(b)'s exceptions, most likely intent. However, courts have made clear that the exceptions must be narrowly construed so that the prohibition against character evidence is not reduced to a hollow pronouncement. For example, courts have repeatedly held that Federal Rule of Evidence 404(b) does not permit evidence of prior alleged bad acts in order to show *generalized intent* to commit the act at issue in the litigation. *See, e.g., Fisher v. Am. Gen. Fin. Co.*, 52 F. App'x 601, 606-07 & n.3 (4th Cir. 2002) (per curiam) (evidence that defendant's employees routinely fabricated personal property descriptions on loan applications was relevant only of a generalized intent to commit dishonest acts and, therefore, inadmissible under Fed. R. Evid. 404(b)); *Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205, 1208-09 (N.D. Ill. 1983) (rejecting argument that evidence of other bad acts was admissible to prove that the defendant's actions were "consistent with its corporate practice and policy of indifference to the duty to safely entrust vehicles"). Likewise, courts have held that a profit motive is too generalized an intent to justify the introduction of evidence of other conduct. *See, e.g., Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 440-41 (D.C. Cir. 1994) (holding that prior conduct evidence proffered to demonstrate, *inter alia*, "'greed,'" was inadmissible under Fed. R. Evid. 404(b) because it was "only a shade less general than a claim that [the defendant] was a bad man").

As the Third Circuit has explained, "a proponent's incantation of the proper uses of [Rule 404(b) evidence] ... does not magically transform inadmissible evidence into admissible evidence." *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (citation omitted). Rather, the relevance of the evidence must be established by linking logical inferences to the specific facts at issue in the lawsuit. *See McLeod*, 73 F. App'x at 854 (excluding evidence under

Rule 404(b) because proponent failed to show a "clear nexus between" the evidence and the facts of the case. At no point can one of the links be that the defendant had the propensity to act a certain way. *See Becker*, 207 F.3d at 191. Here, the evidence is not – and cannot be – proffered to show a causal nexus to Plaintiff's claimed injury. The evidence is offered only to show propensity, which Rule 404 (as well as the Supreme Court's decision in *Campbell*) does not allow.

## V.   THE AUGUST 2009 SETTLEMENT AND PHARMACIA PLEA ARE NOT ADMISSIBLE AS IMPEACHMENT EVIDENCE

The August 2009 Settlement and Pharmacia Plea are also inadmissible as impeachment evidence. First, Federal Rule of Evidence 609 authorizes the use of a witness' prior conviction only to attack the individual witness' credibility. "[I]t is axiomatic that *it is only the testifying witness' own prior convictions* that should be admissible on cross examination to impeach his credibility." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (emphasis added). Thus, "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal act." *Id.* at 524. As the Third Circuit explained in *Walden*:

> Criminal acts are relevant to a witness' credibility only if that witness actually participated in the criminal conduct. It strains logic to argue that an employee's credibility is properly brought into question by the mere fact that he or she is presently employed by a corporation that in some unrelated manner was guilty of dishonest acts, no matter how egregious.

*Id.* at 523-24. Any proposed use of the Pharmacia Plea as impeachment is especially strained here, where the pleading defendant is not a even a party to this action.

Second, the August 2009 Settlement is not admissible to impeach, considering that statements of compromise are likely to be misconstrued by the jury. *See Goodyear Tire*, 332 F.3d at 982-83 (predicting that settlement evidence proffered for impeachment purposes "would likely be inadmissible under Rules 403 and 408"). As the Sixth Circuit has explained, "[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the

ruse of 'impeachment evidence,' by some future third party." *Id.* at 980. Regardless, the August 2009 Settlement and Pharmacia Plea cannot be used to impeach by contradiction in the absence of witness testimony inconsistent with the specific admissions contained in the Pharmacia Plea. *See* Fed. R. Evid. 613; *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 723 (6th Cir. 2005). Thus, even if theoretically admissible to impeach, Plaintiff would first have to elicit testimony on an irrelevant subject, obtain inconsistent testimony, and then offer the Pharmacia Plea as impeachment. The relevancy requirements may not be circumvented so easily.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion *in limine* to exclude any evidence of or reference to the August 2009 Settlement and Pharmacia Plea at trial.

Dated: April 16, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP

By:    /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

NEAL & HARWELL, PLC

By:     /s/ Gerald D. Neenan
        Aubrey B. Harwell, Jr., No. 002559
        W. David Bridgers, No. 016603
        Gerald D. Neenan, No. 006710

2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN  37219
(615) 244-1713
(615) 726-0573 (fax)

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of April 2010, I electronically filed the foregoing document with the Clerk of the Court, United States District Court for the Middle District of Tennessee, using the CM/ECF system. True and correct copies of the foregoing documents are being served via the Court's CM/ECF system on the following:

Andrew G. Finkelstein, Esq.
Kenneth B. Fromson, Esq.
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburg, NY 12550

Dara G. Hegar, Esq.
Ken S. Soh, Esq.
Maura Kolb, Esq.
Robert Leone, Esq.
W. Mark Lanier, Esq.
Lanier Law Firm
6810 FM 1960 West
Houston, TX 77069

Charles F. Barrett, Esq.
Barrett & Associates, P.A.
6718 Highway 100, Suite 210
Nashville, TN 37205

_____ /s/ Gerald D. Neenan _____