# EXHIBIT A

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF MASSACHUSETTS

3

4    - - - - - - - - - - - - - - - - - X

5    IN RE:  NEURONTIN MARKETING, SALES      MDL DOCKET

6    PRACTICES, AND PRODUCTS LIABILITY       NO. 1629

7    LITIGATION                              MASTER FILE

8                                            NO. 04-10981

9    _____       JUDGE PATTI B.

10   THIS DOCUMENT RELATES TO:              SARIS

11   SHEARER V. PFIZER, ET AL.;             MAGISTRATE

12   1:07-CV-11428-PBS                      JUDGE LEO T.

13   - - - - - - - - - - - - - - - - - X    SOROKIN

14   VOLUME I                               Pages 1-212

15

16        VIDEOTAPED DEPOSITION OF DAVID P. FRANKLIN, Ph.D.,

17   a witness called by counsel for the defendant,

18   Pfizer, Inc., taken before Kimberly A. Smith,

19   Certified Realtime Reporter, Registered Diplomate

20   Reporter, and Notary Public in and for the

21   Commonwealth of Massachusetts, at the Law Offices of

22   Greene, LLP, 33 Broad Street, Boston, Massachusetts

23   02109, on Friday, December 18, 2009, commencing at

24   9:16 a.m.

Case 3:05-cv-00444   Document 123-1   Filed 04/16/10   Page 2 of 12 PageID #: 1995

```
 1    APPEARANCES:

 2

 3        Finkelstein & Partners, LLP

 4        By:  Keith L. Altman, Esq.

 5        1279 Route 300

 6        Post Office Box 1111

 7        Newburgh, NY  12551

 8        (800) 634-1212

 9             and

10        The Lanier Law Firm, P.C.

11        By:  Kenneth S. Soh, Esq.

12        6810 FM 1960 West

13        Houston, TX  77069

14        (713) 659-5200

15                    for the Plaintiffs;

16

17        Boies, Schiller & Flexner, LLP

18        By:  William S. Ohlemeyer, Esq.

19        and Daniel E. Holloway, Esq.

20        333 Main Street

21        Armonk, NY  10504

22        (914) 749-8200

23             and

24
```

```
 1    APPEARANCES: (continued)

 2

 3         Skadden, Arps, Slate, Meagher & Flom, LLP

 4         By:  Mark S. Cheffo, Esq.

 5         Four Times Square

 6         New York, NY  10036

 7         (212) 735-2183

 8              and

 9         Pfizer, Inc.

10         By:  Danielle Gentin Stock, Esq.

11         235 East 42nd Street

12         New York, NY  10017

13         (212) 733-0303

14                        for the Defendant, Pfizer, Inc.;

15

16         Duran & Pandos, P.C.

17         By:  Sue-Ann Rowley, Esq. (via telephone)

18         1044 Route 22 West, Suite 5

19         Mountainside, NJ  07092

20         (908) 518-5000

21                        for the Defendant, Philip J.

22                        Obiedzinski;

23

24
```

Case 3:05-cv-00444   Document 123-1   Filed 04/16/10   Page 4 of 12 PageID #: 1997

1    APPEARANCES: (continued)

2

3        Rawle & Henderson, LLP

4        By:  Arthur B. Keppel, Esq.

5        The Widener Building

6        One South Penn Square

7        Philadelphia, PA   19107

8        (215) 575-4200

9                    for Apotex Corp.;

10

11       Greene, LLP

12       By:  Thomas M. Greene, Esq.

13       33 Broad Street, 5th Floor

14       Boston, MA   02109

15       (617) 261-0040

16                    for the Witness.

17

18   Also Present:  George Dobrentey, Videographer

19

20

21

22

23

24

1   allegation you made of improper conduct?

2       A.   I don't know.

3       Q.   So in fact, you don't know whether some of

4   the things that you thought were improper were, in

5   fact, improper?

6       A.   I just remember the Department of Justice

7   press release and that sort of stuff where they laid

8   out what was improper --

9       Q.   Right.

10      A.   -- and -- and what the company -- and the

11  company's guilty plea.

12           MR. OHLEMEYER:  Let me mark -- Hopefully we

13  can do this quickly and then take a break.  Let me

14  mark -- Well, I'll find it.  Here we go.

15                        Let me mark this as our next exhibit.

16                        (Franklin Exhibit No. 4 was

17                        marked for identification.)

18  BY MR. OHLEMEYER:

19      Q.   Dr. Franklin, I've handed you what we've

20  marked as Franklin Exhibit No. 4.  And I suspect

21  you'd agree with me it's a map of the United States?

22      A.   I do.

23      Q.   Can you tell me whether you ever visited a

24  doctor while you were employed at Parke-Davis in the

1    State of Washington?

2         A.    No.

3         Q.    Would you go ahead and write "no" in the

4    State of Washington for me?  Or put "No visit" for

5    me.  Write "No visit."

6              MR. SOH:  You know, I will interject with --

7    I will defer to Tom, but can we do like larger -- can

8    we just -- instead of doing 40 states, can we do

9    regions or something like --

10             MR. GREENE:  Can we just put a "Y" in the

11   state that he promoted in?

12   BY MR. OHLEMEYER:

13        Q.    Can you -- I'll rephrase the question.

14             Can you tell me, Dr. Franklin, which

15   states that you actually visited doctors in while you

16   were employed at Parke-Davis?

17        A.    I believe it was Maine --

18        Q.    Let me -- Let me stop you there.  Do you

19   recall how many doctors you visited in Maine?

20        A.    No.

21        Q.    All right.  Where else?

22        A.    Massachusetts, Rhode Island, Connecticut.

23   I believe Connecticut.  New Hampshire.  And possibly

24   New York.

Case 3:05-cv-00444   Document 123-1   Filed 04/16/10   Page 7 of 12 PageID #: 2000

1     Q.   Can you -- can you tell me how many doctors

2  you might have visited in Massachusetts?

3     A.   The bulk of them would have been in

4  Massachusetts, but I do not recall.

5     Q.   When you say "bulk," is that, you know,

6  90 percent --

7     A.   80 percent --

8     Q.   80 percent.

9     A.   -- 85 percent.

10     Q.   How many doctors do you recall seeing in

11  Rhode Island?

12     A.   I don't recall.

13     Q.   Let me ask you this.  After Massachusetts,

14  what would the second most --

15     A.   Rhode Island.

16     Q.   Rhode Island.  You saw more doctors in

17  Rhode Island than anywhere else.  All right.  Can I

18  then -- can we -- Do you remember the names -- If I

19  didn't ask you that --

20     A.   Yes.

21     Q.   -- do you remember the names of any of the

22  doctors you actually saw in any of these states?

23     A.   I don't.

24     Q.   And it's fair to say that any of these

 1  doctors you saw you would have seen sometime between

 2  April 1 and August 1 of 1996?

 3      A.   Yes.

 4      Q.   Can you go ahead then for me and write the

 5  word "visit" -- or "no" --

 6      A.   It will be tough to fit "visit" in Rhode

 7  Island.

 8      Q.   Let me ask you to do this.  Why don't you

 9  take the pen and just kind of mark out the states

10  that you actually visited doctors in.

11      A.   (Witness complied.)

12               That I believe I visited?

13      Q.   Right.

14      A.   Right.

15      Q.   And you can even put a question mark in New

16  York if that makes you feel more comfortable.

17      A.   (Witness complied.)

18      Q.   So -- so without belaboring this, doctor,

19  am I correct that when you were employed at

20  Parke-Davis, you never visited a doctor in any state

21  besides Maine, Massachusetts, Rhode Island,

22  Connecticut, New Hampshire, and perhaps New York;

23  is that right?

24      A.   Yes.  I'm not sure about Vermont.  I'm not

1    sure if you mentioned Vermont.  But yes.

2         Q.   You do or you don't recall Vermont?

3         A.   I don't recall Vermont.

4         Q.   And am I correct that while you were

5    employed at Parke-Davis -- while you were -- strike

6    that.

7                   While you were employed at Parke-Davis,

8    doctor, the bulk of the visits you made -- probably

9    85 percent of them -- were to doctors in Massachusetts?

10        A.   Yes.

11        Q.   And I'm also correct that you never visited

12   any doctor in any other state in the United States?

13        A.   That's true.

14             MR. OHLEMEYER:  Do you want to take a break?

15             MR. GREENE:  Sure.

16             THE VIDEOGRAPHER:  The time is 11:54 a.m.

17   This is the end of Tape 2 and we're off the record.

18                        (Whereupon, at 11:55 a.m.,

19                        the deposition was recessed,

20                        to reconvene at 12:45 p.m.

21                        this same date.)

22

23

24

```
 1                    AFTERNOON SESSION

 2                                        (12:52 p.m.)

 3              THE VIDEOGRAPHER:  The time is 12:52 p.m.

 4     This is the beginning of Tape 3, and we are back on

 5     the record.

 6                   DAVID P. FRANKLIN, Ph.D.,

 7         the witness at the time of recess, having

 8         been previously duly sworn, was further

 9         deposed and testified as follows:

10                   EXAMINATION (continued)

11     BY MR. OHLEMEYER:

12         Q.   All right.  Again, David -- or

13     Dr. Franklin -- David -- if you want to take a break,

14     let me know.  If you don't understand a question, let

15     me know.

16         A.   Yes.

17         Q.   Can you tell me what states were within the

18     Northeast CBU?

19         A.   I -- It was the New England states, so

20     Maine, New Hampshire, Vermont, Connecticut, Rhode

21     Island, Massachusetts, parts of New Jersey and parts

22     of New York.  And I believe Pennsylvania, parts of

23     Pennsylvania also.  Perhaps all of Pennsylvania.

24         Q.   So there were parts of the Northeast CBU
```

Case 3:05-cv-00444   Document 123-1   Filed 04/16/10   Page 11 of 12 PageID #: 2004

1    that either you were not responsible for or didn't

2    visit during your Parke-Davis days?

3        A.    That's right.    There were medical liaisons

4    spread out throughout the Northeast.

5        Q.    And what states were part of the Southeast

6    CBU?

7        A.    I don't recall specifically.    But North

8    Carolina, South Carolina, Georgia, Florida.    The

9    Southeast.

10       Q.    Did you ever have any personal involvement

11   or firsthand involvement in the Southeast CBU?

12       A.    No, I did not.

13       Q.    Do you -- Would you agree with me that in

14   general, a medical liaison program serves a legitimate

15   purpose?

16            MR. ALTMAN:    Objection.    Form.

17            THE WITNESS:    I don't know.    I . . .

18   BY MR. OHLEMEYER:

19       Q.    Well, let me rephrase the question.

20       A.    Okay.    Okay.

21       Q.    If you wanted to put a program together to

22   provide information to doctors, and if you followed

23   all the rules, then there wouldn't be anything

24   inherently wrong with that kind of program?

Case 3:05-cv-00444   Document 123-1   Filed 04/16/10   Page 12 of 12 PageID #: 2005