IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUTH SMITH, Individually and as Widow for the Use and Benefit of Herself and the Next Kin of Richard Smith, Deceased,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PFIZER, INC., *et al.*,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>) Civil No. 3:05-0444<br>) Judge Aleta A. Trauger<br>) (Dist. Of MA No.<br>) 1:05-cv-11515PBS)<br>)<br>)<br>) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE MISCELLANEOUS SUBJECTS FROM EVIDENCE AT TRIAL

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") hereby respond to Plaintiff's motion *in limine* to exclude certain miscellaneous subjects from evidence at trial. Pfizer has grouped several subjects on which it asserts the same response.[1]

**(1) That a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications. (Pl. Mem. at 2-3.)**

**(2) Any comment or inference, evidence, testimony, or documents tending to suggest in any way that an award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical or health products available to individuals or industries in the United States or worldwide. (Pl. Mem. at 3.)**

**(4) That this case or any other Neurontin products liability case may cause an increase in the cost of purchasing or maintaining insurance. (Pl. Mem. at 3.)**

**(5) That this case or any other Neurontin product liability case may cause an increase in the cost of purchasing medications for the public. (Pl. Mem. at 3.)**

Pfizer opposes Plaintiff's motion as to the foregoing subjects because such evidence is relevant to Plaintiff's claim for punitive damages. Specifically, Pfizer must be permitted to

---
[1] The numbering of the issues below corresponds to that set forth in Plaintiff's motion.

introduce evidence that a punitive damages award greater than that reasonably necessary to deter the conduct allegedly giving rise to liability and warranting punitive damages may lead to over-deterrence, inhibit Pfizer's development of new medications to improve public health, and increase healthcare costs. The MDL court has already adopted this stance in a previous ruling in *Bulger v. Pfizer Inc.*, 1:04-10981-PBS. (Ex. A, Final Pretrial Conference Transcript, *Bulger*, at 77:14-24.)[2]

The Supreme Court has made clear that due process requires that punitive damages awards be reasonable, and in all events no greater than the amount necessary to punish and deter the conduct at issue. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419-20 (2003) (reversing punitive damages award where "a more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives" of punishment and deterrence); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 584 (1996) ("The [punitive damages] sanction imposed in this case cannot be justified on the ground that it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that goal."). Consistent with this authority, Pfizer must be allowed to present evidence on the issue of deterrence, including evidence that an unreasonably large punitive damages award would stifle product innovation and increase healthcare costs.

The cases on which Plaintiff relies do not support exclusion of such evidence on the issue of punitive damages on prejudice or other grounds. None of the cases involved claims for punitive damages, much less evidence that an unreasonably large punitive damages award could deter product development. Indeed, the court in *Norman v. Gloria Farms, Inc.*, 668 So. 2d 1016 (Fla. Dist. Ct. App. 1996), found that the defendant's closing argument about a "punitive effect on landowners in general" if the jury were to find the defendant liable for injuries sustained by the plaintiff while hunting on the defendant's land was improper because *"no punitive damages were being claimed." Id.* at 1021 (emphasis added). Where punitive damages *are* at issue,

---

[2] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

2

evidence on issues of punishment and deterrence, including the potential impact on innovation and the broader community, are highly probative. *See, e.g., Jimenez v. Chrysler Corp.*, 74 F. Supp. 2d 548, 577 (D.S.C. 1999) (observing that, "[i]n a sense, the jury, on the punitive damages issue, truly is the conscience of the community, because it is charged with responsibility for determining the reprehensibility of conduct and what the appropriate punishment and deterrent may be," and distinguishing the "conscience of the community" reference in *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233 (5th Cir. 1985), cited by Plaintiff here, as not involving a punitive damages claim), *rev'd in part and vacated in part on other grounds*, 269 F.3d 439 (4th Cir. 2001).

During the final pretrial conference in *Bulger*, the MDL court addressed an identical argument made by the plaintiff in that case and ruled that this evidence was relevant and admissible to the issue of punitive damages. (Ex. A, Final Pretrial Conference Transcript, *Bulger*, at 77:14-24.)

**(6) Any comment, evidence, testimony, inference or document mentioning medical conditions of Plaintiff's decedent's family that are unrelated to the injuries at issue in this lawsuit. (Pl. Mem. at 4.)**

Pfizer opposes Plaintiff's motion to the extent it purports to exclude evidence of Mr. Smith's family's health problems because such evidence is highly relevant to the central issues of Mr. Smith's mental health state and risk factors for suicide. For example, Mr. Smith's daughter suffered from breast cancer at the time of his suicide. This evidence is clearly relevant to Mr. Smith's state of mind at the time of his suicide. Plaintiff will have ample opportunity to present her own expert testimony on these issues and to cross examine Pfizer's witnesses.

**(7) Any comment, inference, evidence, testimony, or document tending to suggest in any way that an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law. (Pl. Mem. at 4.)**

The constitutionality or legality of a punitive damages award concerns a legal argument that is not the proper subject of a motion *in limine*. Pfizer will present any such argument to the Court, not the jury.

3
Case 3:05-cv-00444 Document 130 Filed 04/27/10 Page 3 of 7 PageID #: 2148

> **(9) That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation or that plaintiff's firm implemented a national advertising campaign for Neurontin cases. (Pl. Mem. at 4-5.)**

Pfizer agrees that arguments or evidence tending to characterize or malign the parties' respective counsel are irrelevant and improper and should be excluded. However, Pfizer opposes Plaintiff's motion to exclude evidence that Plaintiff's counsel implemented a national advertising campaign for Neurontin cases. As Pfizer's experts have opined, the national advertising campaign injected bias into the adverse reporting system for Neurontin, on which Plaintiff's experts have heavily relied, and is directly relevant to the issues of duty to warn and general causation. (*See, e.g.*, Ex. B, Report of Sheila Weiss Smith, Ph.D., FISPE, at 14, 15-22.) Indeed, Plaintiff's own expert, Cheryl Blume, Ph.D., conceded that attorney advertising for Neurontin litigation could have stimulated adverse event reports (*see* Ex. C, Cheryl Blume Dep., at 201:1-202:1), and Keith Altman, who prepared the adverse event analyses on which Dr. Blume relied for her opinions, has averred that "Dr. Blume . . . always requested that I confine analyses to data before the 3rd quarter of 2003 for signal detection purposes. [Dr. Blume] clearly recognized that such a [notoriety] bias was possible after that point in time . . . ." (Ex. D, Declaration of Keith Altman, ¶ 24.) Plaintiff will, of course, be able to proffer expert testimony on the effect, if any, of the advertising campaign on the adverse reporting system, and to cross-examine Pfizer's experts on the issue. In *Bulger v. Pfizer Inc.*, 1:04-10981-PBS, the MDL court indicated that evidence regarding the national advertising campaign might be admissible for this purpose. (Ex. A, Final Pretrial Conference Transcript, *Bulger*, at 80:10-81:7.)

> **(10) Any comment or personal anecdote from any witness or lawyer for Defendants about themselves, or family members who have used Neurontin. (Pl. Mem. at 5.)**

Pfizer does not oppose Plaintiff's motion and agrees that any personal anecdotes about Neurontin use from any non-parties is irrelevant, prejudicial and should not be admitted.

> **(11) Any comment, evidence, testimony, inference or document mentioning that: (a) state products liability law frustrates the FDA's protective regime; (b) state tort law undercuts the FDA's mission to provide only scientifically valid warnings; (c) state warning defect or failure-to-warn laws pressure drug manufacturers to add**

**unsubstantiated, false, or invalid warnings in order to avoid lawsuits; or (d) too many warnings of serious injuries will dilute the effectiveness of warnings generally. (Pl. Mem. at 5.)**

Pfizer does not intend to make legal arguments to the jury. It does, however, intend to, and should be permitted to, present expert testimony on whether or not it would have been reasonable for it to warn, at the time that Mr. Smith was prescribed Neurontin, that Neurontin can increase the risk of suicidal thoughts or behavior. This testimony will, among other things, address why a company should not warn of risks in the absence of sufficient scientific and medical evidence and why over-warning about risks in the prescription drug context is a problem. *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), on which Plaintiff relies, stands for the proposition that FDA approval does not create an absolute legal defense to a failure-to-warn claim. It does not, however, support a finding that a defendant should be prohibited from presenting, and juries from considering, factors proffered by a competent expert that would make it reasonable or unreasonable for a manufacturer to warn of a particular risk.

**(3) Making reference that this case or other Neurontin products liability litigation cases may have a negative impact on the stock price of Pfizer Inc or any other publicly traded pharmaceutical manufacturer. (Pl. Mem. at 3.)**

**(8) Any mention of the purported "litigation crisis," "lawsuit crisis," "lawsuit abuse," or similar terms or phrases. (Pl. Mem. at 4.)**

Pfizer does not oppose Plaintiff's motion as to the foregoing subjects, so long as Plaintiff refrains from references to or evidence of the same.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiff's motion to exclude evidence regarding the subjects enumerated above as 1, 2, 4, 5, 6, 7, 9, and 11.

Dated: April 27, 2010                    Respectfully submitted,

                                                   SKADDEN, ARPS, SLATE,
                                                      MEAGHER & FLOM LLP

                                           By:   /s/ Mark S. Cheffo
                                                      Mark S. Cheffo

                                           Four Times Square
                                           New York, NY 10036
                                           Tel: (212) 735-3000

                                                      -and-

                                           NEAL & HARWELL, PLC

                                           By:   /s/ Gerald D. Neenan
                                                      Aubrey B. Harwell, Jr., No. 002559
                                                      W. David Bridgers, No. 016603
                                                      Gerald D. Neenan, No. 006710

                                           2000 One Nashville Place
                                           150 Fourth Avenue, North
                                           Nashville, TN 37219
                                           (615) 244-1713
                                           (615) 726-0573 (fax)

                                           *Attorneys for Defendants Pfizer Inc and*
                                           *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of April 2010, I electronically filed the foregoing document with the Clerk of the Court, United States District Court for the Middle District of Tennessee, using the CM/ECF system. True and correct copies of the foregoing documents are being served via the Court's CM/ECF system on the following:

Andrew G. Finkelstein, Esq.
Kenneth B. Fromson, Esq.
Finkelstein & Partners, LLP
1279 Route 300
Newburg, NY 12550

Dara G. Hegar, Esq.
Ken S. Soh, Esq.
Maura Kolb, Esq.
Robert Leone, Esq.
W. Mark Lanier, Esq.
Lanier Law Firm
6810 FM 1960 West
Houston, TX 77069

Charles F. Barrett, Esq.
Barrett & Associates, P.A.
6718 Highway 100, Suite 210
Nashville, TN 37205

/s/ Gerald D. Neenan