# EXHIBIT B

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
 2

 3

 4   IN RE:                                  )
                                             ) CA No. 04-10981-PBS
 5   NEURONTIN MARKETING, SALES PRACTICES,)   Pages 1 - 124
     AND PRODUCTS LIABILITY LITIGATION       )
 6

 7

 8

 9              FINAL PRETRIAL CONFERENCE - DAY TWO
                              AND
10                        DAUBERT HEARING

11              BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
12

13

14

15
                                   United States District Court
16                                 1 Courthouse Way, Courtroom 19
                                   Boston, Massachusetts
17                                 July 21, 2009, 9:15 a.m.

18

19

20

21

22
                           LEE A. MARZILLI
23                      OFFICIAL COURT REPORTER
                       United States District Court
24                     1 Courthouse Way, Room 7200
                           Boston, MA  02210
25                          (617)345-6787
```

APPEARANCES:

FOR THE PLAINTIFFS:

ANDREW G. FINKELSTEIN, ESQ., KENNETH B. FROMSON, ESQ., and KEITH L. ALTMAN, ESQ., Finkelstein & Partners, LLP, 1279 Route 300, P.O. Box 1111, Newburgh, New York, 12550.

FOR THE DEFENDANTS:
DAVID B. CHAFFIN, ESQ., White and Williams, LLP, 100 Summer Street, Suite 2707, Boston, Massachusetts, 02110.

MARK S. CHEFFO, ESQ. and STEVE NAPOLITANO, ESQ., Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, New York, 10036.

RICHARD M. BARNES, ESQ. and WARREN HONG, ESQ., Goodell DeVries, Leech & Dann, LLP, One South Street, 20th Floor, Baltimore, Maryland, 21202.

ALSO PRESENT: Chuck Vaughn, Trial Graphics.

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Sander Greenland | | | | |
| BY MR. ALTMAN: | 42 | | | |
| BY MR. BARNES: | | 72 | | |

PROCEEDINGS

THE CLERK: In Re: Neurontin Marketing, Sales Practices, and Products Liability Litigation, Civil Action No. 04-10981, will now be heard before this Court. Will counsel please identify themselves for the record.

MR. FINKELSTEIN: Andrew Finkelstein, Finkelstein & Partners, on behalf of Dr. Egilman. Judge, Dr. Egilman happens to be here today, so I just wanted to introduce you. Yesterday you said you hadn't seen him.

MR. FROMSON: Good morning, Judge. Kenneth Fromson, Finkelstein & Partners.

MR. ALTMAN: Good morning, your Honor. Keith Altman, Finkelstein & Partners.

MR. CHEFFO: Your Honor, Mark Cheffo, Skadden Arps.

MR. NAPOLITANO: Good morning, your Honor. Steve Napolitano from Skadden Arps.

MR. BARNES: Rick Barnes from Goodell DeVries in Baltimore.

MR. CHAFFIN: Good morning, your Honor. David Chaffin for Pfizer.

THE COURT: The two of you are the hard workers?

MR. HONG: Warren Hong from Goodell DeVries in Baltimore.

MR. VAUGHN: Charles Vaughn from Trial Graphics.

THE COURT: Thank you. So today we're going to begin the hearing on the statistics, and I reject the plaintiffs' proposed jury questionnaire as well as defendants'. I'm thinking of a question that looks essentially like this: "This case involves suicide. Would this topic cause you so much stress and discomfort that you would be unable to listen to the evidence or be fair?" I'm going to basically give people an out. If they say "yes," they don't sit on the jury. So I'm not going to ask people if they ever thought about suicide. It's a little intrusive. And I'll ask people orally some of these other questions, which is, for example, ever taken Neurontin, and some of these other, whether anyone close to you ever tried to commit suicide, et cetera? So then you can see who they are and use peremptories, if you choose to, but I'm not going to ask people to expose their innermost thoughts and medical conditions.

So let's just get on to the Daubert hearing.

MR. ALTMAN: Good morning, your Honor. Today we are here in an attempt to strike the testimony of Dr. Robert Gibbons under Daubert, Joyner, and progeny and Rule 702. Is your screen on, your Honor?

THE COURT: Yes.

MR. ALTMAN: And Rule 702. Rule 702 governs the testimony of experts, and in order for testimony to be

## Page 118

1  MR. FROMSON: Cynthia McCormack did the clinical
2  review in 1992. It's the infamous clinical review.
3  THE COURT: Oh, yes, that's a big one.
4  MR. FROMSON: Yes, it is. And defendants retained
5  her, and defendants paid her, and she did an affidavit, and
6  she was paid to provide opinions in the case, and we deposed
7  her in a discovery deposition. My concern is, we have
8  objections to her so-called opinion testimony. If she's
9  truly an expert retained by the defense, she should be here
10 live, or else why wouldn't we start playing our experts by
11 video?
12 THE COURT: So that's not a thousand --
13 MR. FROMSON: No, that's a real macro issue. When
14 you asked, do we have lots of objections to designations,
15 yes, overall we have many depositions we have to go over.
16 So the issue that comes to mind was Cynthia McCormack, do
17 they have to bring her life, is she --
18 THE COURT: She can testify about factually what
19 she did or she didn't do.
20 MR. FROMSON: I agree. The issue is, when they
21 ask her an opinion about whether Neurontin causes suicide,
22 she ought to be in the courtroom subject to cross to give
23 that.
24 THE COURT: She can only do it about what her
25 opinion was at that particular moment in time.

## Page 119

1  MR. FROMSON: I understand that, Judge. Thank
2  you. That gives me guidance.
3  THE COURT: Not now.
4  MR. FROMSON: That gives me guidance, your Honor,
5  as to how the objections will be ruled upon with the yellow
6  and red.
7  THE COURT: If she's a fact witness, she comes in
8  that way. If she's an expert witness -- was she designated
9  as an expert?
10 MR. FROMSON: No.
11 MR. CHEFFO: Your Honor, again, this is like, you
12 know, kind of a trial by ambush thing. We're pulling out
13 something you haven't even seen. He's asking you to make
14 rulings before you've even seen --
15 MR. FROMSON: No, I actually asked if there was a
16 mechanism by which to bring it to her attention, if not
17 today. That's what I asked.
18 THE COURT: Let me just say this: What I don't
19 want -- that seems like a completely fair issue to present
20 to me.
21 MR. FROMSON: Thank you, Judge.
22 THE COURT: What I don't want is, "We can't agree
23 that this is a leading question," or, "This is --"
24 MR. FROMSON: We don't have those issues.
25 THE COURT: You know, that this is, you know,

## Page 120

1  repetitive, or just some broad-sweep foundation.
2  MR. CHEFFO: I think, you know, to that point, we
3  understand. I think we've gotten some guidance as well from
4  yesterday. Is it something that you expect your chambers to
5  deal with, or is it something that the magistrate will deal
6  with?
7  THE COURT: I'll deal with. This is trial
8  testimony at this point, but just understand that if you get
9  it to me too late, I'm not going to rule on it.
10 MR. FROMSON: That's why I was concerned.
11 THE COURT: And if it screws up your timing and
12 editing and all of that, because I have all these other
13 cases in the afternoon, and plus I've got a thousand other
14 obligations. So if you want me to rule, I am not an ATM
15 machine. Like, when you started spitting more motions out
16 than I could rule on per minute, I can't keep up. You have
17 to use some internal filtration device.
18 MR. FROMSON: So that's why I inquired today,
19 Judge, and I don't want to file a motion when you had a
20 standing order that says "no more motions." So I'm here
21 Wednesday, I'm here Thursday if you want to address it.
22 THE COURT: When I say "no more motions," if
23 someone has a stroke or there's like a crisis like we had
24 with this witness who claims she was intimidated, I'm not
25 referring to that. I'm talking about --

## Page 121

1  MR. FROMSON: Well, may I have leave to file the
2  motion on this issue?
3  THE COURT: No, no.
4  MR. FROMSON: Okay. So I don't know what the
5  mechanism is.
6  THE COURT: I've allowed you to object to each
7  other's depositions. It's not just trial -- if there's a
8  real crisis that comes up, "Judge, we're settling the case,"
9  let me know, give us a --
10 MR. FROMSON: Your Honor, I don't know whether
11 defense counsel is going to claim to you two days before
12 they expect to play her video, "Judge, we didn't get a plane
13 ticket for her to come up here. No one told us she had to
14 testify live." Mr. Fromson said --
15 THE COURT: Excuse me. You know, at this point
16 I'm saying the only thing I have left, as far as I know, for
17 all of you, the only key thing is hearing from Dr. Gibbons
18 on Thursday. And there's one thing I might have to do, and
19 I may have to juggle the times a little bit, but other than
20 that, that's all that I view my having to rule on at this
21 point.
22 MR. FROMSON: Thank you, Judge.
23 THE COURT: Other than that, I think everything
24 has been ruled on.
25 MR. FROMSON: Yes, your Honor.