IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUTH SMITH, Individually and as Widow for the Use and Benefit of Herself and the Next of Kin of RICHARD SMITH, Deceased,<br><br>Plaintiff,<br><br>-against-<br><br>PFIZER INC., PARKE-DAVIS, a division of Warner-Lambert Company and Warner-Lambert Company LLC, WARNER-LAMBERT COMPANY, WARNER-LAMBERT COMPANY LLC and JOHN DOE(S) 1-10,<br><br>Defendants. | Case #: 3:05-00444<br>Judge Trauger |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S
APRIL 14, 2010 SUPPLEMENTAL EXPERT DISCLOSURES**

Plaintiff Ruth Smith, by and through her attorneys, respectfully requests that this Court deny in its entirety Defendants' motion to strike Plaintiff's supplemental expert disclosures, dated April 14, 2010, and to preclude Plaintiff from introducing her April 14, 2010 supplemental expert disclosures at trial.

**PRELIMINARY STATEMENT**

Plaintiff was obliged pursuant to Fed. R. Civ. P. 26 to supplement her disclosures because if her experts did not consider the two articles in question — published only in March and April 2010 — which concern two nationwide epidemiological studies regarding anticonvulsants, including gabapentin, and the increased risk for suicide published by two peer reviewed pre-eminent scientific journals, *Journal of the American Medical Association* (JAMA) *and Pharmacoepidemiology and Drug Safety*, her expert disclosures would be incomplete. These

two articles pertain directly to the very heart of Plaintiff's claims, that ingestion of Neurontin increases the risk for adverse mood and behavior changes and increases the risk for suicidality.

Plaintiff submits that at this juncture the parties are on an even footing in regard to the two articles and the information contained therein. Indeed, any expert who would provide testimony in this case on the capacity of Neurontin to cause suicide would have to disingenuously close their eyes and minds, and leave their professional ethics outside of the courtroom were they not to mention these two nationwide epidemiological studies. When such pertinent scientific information is available before trial and before the pre-trial submissions, a jury should be able to consider the evidence in their determination of the case. Plaintiff has good cause and is substantially justified in supplementing her expert disclosures on a timely basis, pursuant to Fed. R. Civ. P. 26. The *Pharmacoepidemiology Drug Safety* article was published in March 2010, approximately one month before, and the JAMA article was published on the date of Plaintiff's supplemental expert disclosures, April 14, 2010.

Plaintiff's experts offer no new opinions, and their opinions are not substantively changed by the information contained in the articles. Rather, the review and reliance on the aforementioned articles goes towards the "completeness" of their expert disclosures as recognized by the Federal Rules of Civil Procedure. Plaintiff's experts' opinions are consistent with the articles, and Defendants' will not be harmed by this disclosure. Defendants' experts are on equal footing in regard to the content of the articles as presumably the experts have access to the articles as part of their regular scientific endeavors. Contrary to Defendants' assertions, Plaintiff is not attempting to "bolster", that is, cure any "inadequate or incomplete preparation" in regard to her expert reports. To Defendants' chagrin, the supplementation does not alter any

2

of Plaintiff's theories of the case and does not add any expert opinions on any new issues, but simply states that the articles are consistent and supports Plaintiff's experts' opinions.

Furthermore, Plaintiff intends to utilize the articles as rebuttal evidence, pursuant to Fed. R. Civ. P. 26(a)(3)(a), to impeach Defendants' expert, Dr. Robert D.. Gibbons, in regard to the FDA Study. Indeed, as Defendants' expert statistician, Dr. Gibbons has consistently touted his expert disclosure in opposition to the FDA's meta-analysis and the FDA Alert, and bolstered his litigation-driven activities by publishing his opinion in the journal, *Archives of General Psychiatry*. The JAMA article, written by scientists having no relationship to the litigation and set forth in Plaintiff's supplemental expert disclosure, found that the results of its study were "compatible with the result of the FDA meta-analysis, which found similarly increased risks of suicidal behavior or ideation for all anticonvulsant drugs compared with placebo." Docket No. 114-2 at 11.

The deadline for filing of pre-trial disclosures in this case is April 27, 2010, and so Plaintiffs' disclosures are timely. Plaintiff would be amenable to Defendants' telephonically deposing Plaintiff's experts by telephone for an hour, but limited to inquiry on their review, consideration and reliance on the aforementioned articles.

## ARGUMENT

Defendants' motion to strike Plaintiff's experts' disclosure should be denied. Plaintiff timely disclosed her experts' review and reliance upon recently published, relevant articles related to Neurontin and suicidality. Pursuant to Fed. R. Civ. P. 26(e), Supplementing Disclosures and Responses:

> (1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
    (B) as ordered by the court.
   (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Moreover, pursuant to Fed. R. Civ. P. 26(a)(3) Pretrial Disclosures:

   (A) In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:
\* \* \*
   (B) Time for Pretrial Disclosures; Objections. **Unless the court orders otherwise,** these disclosures must be made at least 30 days before trial. . . .

The Notes of Advisory Committee on 1983 amendments to Rule 26 provides clarification in

regard to Rule 26(e) expert disclosure:

> However, with respect to experts from whom a written report is required under subdivision (a)(2)(B), changes in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under subdivision (e)(1).
>    The **obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete** or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report.

As discussed by the Court in *Talbert v. City of Chicago*, 236 F.R.D. 415 (N.D. Ill. 2006):

> By mandating supplementation, Rule 26(e) seeks to prevent surprise at trial. Allowing, as a discretionary matter, the filing of a supplemental report that fully informs the recipient of the anticipated testimony of the expert accomplishes that very purpose. So long as that decision does not entail some greater harm to the opponent of the report, sound discretion would seem to counsel allowing the supplemental report to be filed. The City's construction of Rule 26(e) as a prohibition against supplementation of expert reports that rely on information that was already in the possession of the parties at the time of the supplementation

4

disserves the desideratum of the Rule and effectively eliminates the discretion Rule 26(a)(2)(C) grants.

*Id.* at 421.

In *Porter v. Hamilton Beach/Proctor-Silex, Inc.,* where experts supplemented their disclosures to consider new information received, the court found the supplemental expert disclosures were timely filed and denied a motion to strike the disclosures, noting that "[t]he information was no doubt pertinent to Donnelly's investigation. Rule 26(e) does not prohibit an expert from supplementing his disclosures based on information thereafter received from the opposing party." No. 01-2970-MaV, 2003 U.S. Dist. LEXIS 14089, at *15 (W.D. Tenn. Jul. 28, 2003). The court stated that the movant would not be prejudiced by the supplemental report because at trial they had the opportunity to cross-examine the expert regarding any differences between the two expert reports. *Id.* at *16.

In *Rotello v. Clayton Homes of Del., Inc.,* defendants moved to strike plaintiff's expert's supplemental affidavit which contained new information. No. 3:03-CV-573 (Varlan/Shirley), 2007 U.S. Dist. LEXIS 3062, at * 4,5 (E.D. Tenn. Jan. 12, 2007). Plaintiffs claimed it was impossible to include the expert's analysis in his prior report because Defendants had failed to disclose their claims in a timely manner. *Id.* at * 4, 5. The court denied the motion to strike, finding that plaintiffs had provided "sufficient justification for their failure to disclose this information earlier and that this failure is harmless." *Id.* at 5.

In *Mintel Int'l Group, LTD. v. Meesham Neergheen,* where supplemental expert disclosures were based on information acquired after the deadline for expert disclosures, the court denied a motion to preclude the disclosures and stated:

> As Magistrate Judge Cole has summarized, "[j]udges have vast discretion in supervising discovery and in declining to impose sanctions and exclude evidence." *Talbert v. City of Chicago,* 236 F.R.D. 415, 419 (N.D. Ill. 2006)

5

> (citing, *inter alia, Crawford-El v. Britton,* 523 U.S. 574, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)). In this instance, the Court concludes that the disclosures made in December and January are best viewed as "supplemental disclosures," which "are permitted when they are based on information acquired subsequent to the original disclosure or a realization that the original disclosure was incomplete or incorrect." *Baldwin Graphic Systems, Inc. v. Siebert, Inc.,* 2005 U.S. Dist. LEXIS 10692, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). And while "supplemental expert opinions that threaten to belatedly send the case on a wholly different track" may be excluded (see *Talbert,* 236 F.R.D. at 424), the supplemental opinions tendered by Jones relate to the same issues on which **a battle of the experts has been ongoing since the outset of the litigation and on which both experts will have an opportunity to elaborate in their trial testimony.** *See* Advisory Committee Note to Fed. R. Civ. P. 26(a)(2) (stating that the expert disclosure rule is intended to give opposing parties "reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses").

636 F. Supp. 2d 677, 685-86 (N.D. Ill. 2009).

In this case, Plaintiff's supplemental expert disclosures are timely in that the disclosures were served on April 14, 2010, and pursuant to this Court's December 12, 2009 Order Setting Case For Trial of this Court (Docket No. 38), pre-trial disclosures including witness lists, exhibit lists, stipulations and Expert Witness Statements, pursuant to Local Rule 39.01(c)(6)(c) are to be filed with the Court by April 27, 2010. As discussed *supra*, the two articles in question concern the main issue of this case: whether Neurontin can cause adverse mood and behavior changes and increase the risk for suicidality. Plaintiff is justified in supplementing her expert reports at this juncture because these extremely pertinent epidemiological studies were only just published and released to the scientific community. Plaintiff's experts have testified at a *Daubert* hearing and their opinions have been adjudged to be admissible by Judge Saris in the MDL.

Unlike the plaintiff in *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, cited by Defendants, Plaintiff Ruth Smith is not asserting a totally new theory from information that was available at the time of the experts' initial disclosure. No. CIV 08-1101 JB/RLP, 2009 U.S. Dist LEXIS 101920 (D.N.M. Sept. 24, 2009). Further, this case is distinguishable from the situation

in *Akeva LLC v. Mizuno Corp.*, where the expert was not satisfied with his first report so he performed a further test to "bolster" a report that could have been performed prior to the initial report. 212 F.R.D. 306 (M.D.N.C. 2002). In this case, the articles in question were not written by Plaintiff's experts but appeared in preeminent scientific journals after Plaintiff's expert had written their reports that had been found admissible. And, unlike the situation in *Oklahoma v. Tyson Foods, Inc.,* where the plaintiff's opinions were found to be inadmissible on the issue of reliability, and the plaintiff attempted to supplement expert reports to either "strengthen or deepen" their opinions, here, Plaintiff's experts' opinions have been found admissible. No. 05-CV-329-GKF-PJC, 2009 U.S. Dist. LEXIS 66530, at *18-19 (N.D. Okla. July 24, 2009). In this case, Plaintiff's expert opinions remain the same opinions that they provided in their prior reports that were found to be admissible.

Moreover, Defendants cite to *Leviton Mfg. Co., Inc. v. Nicor Inc.*, where the court granted defendants' motion to strike a supplemental expert report that provided new expert theories. 25 F.R.D. 524, 531 (D.N.M. 2007). Once again, here, Plaintiff's experts are not attempting to modify their theory of the case set forth in their reports, which have been found to be admissible.

The two epidemiological studies that are the subject of the articles are consistent with Plaintiff's experts' opinions — the articles provide additional scientific information that is presently available on the issue of the bioplausibility of Neurontin to cause suicidality. The articles serve to complete the information within the experts reports.

Plaintiff was substantially justified in supplementing her expert disclosures with this information; she did so as soon as the articles were published and before the pre-trial deadline. Noteworthy, it has been the practice in the MDL that when new scientific information arose concerning the issue of causation, the parties were allowed to supplement their expert

7

disclosures, such as the FDA Alert of January 2008. Defendants will not be harmed by disclosure of the articles since Defendants' experts have access to the articles just as Plaintiff's experts have access to this information in their scientific endeavors and therefore, are on equal footing in regard to the information. Plaintiff would not be adverse to this Court allowing Defendants to conduct a telephonic deposition of Plaintiff's experts for an hour in reference solely to the issue of the two articles in question, which has been the past practice in the MDL.

Dated: April 27, 2010

Respectfully submitted,

THE LANIER LAW FIRM, P.L.L.C.

By:  **/s/ W. Mark Lanier**
W. Mark Lanier, Esq.
Dara G. Hegar, Esq.
Ken S. Soh, Esq.
Maura Kolb, Esq.
Robert Leone, Esq.
126 East 56th Street, 6th Floor
New York, NY 10022

- and -

FINKELSTEIN & PARTNERS, LLP

By:  **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esq.
Kenneth B. Fromson, Esq.
1279 Route 300, P.O. Box 1111
Newburgh, NY 12551

- and -

BARRETT & ASSOCIATES, P.A.

By:  **/s/ Charles F. Barrett**
Charles F. Barrett, Esq.
BPR # 020627
6518 Highway 100, Suite 210
Nashville, TN 37205

*Attorneys for Plaintiff Ruth Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of April, 2010, I electronically filed the foregoing document with the Clerk of the Court, United States District Court for the Middle District of Tennessee, using the CM/ECF system. True and correct copies of the foregoing documents are being served via the Court's CM/ECF system on the following:

Aubrey B. Harwell, Jr., Esq.
W. David Bridgers, Esq.
Gerald D. Neenan, Esq.
Robert A. Peal, Esq.
Neal & Harwell, PLC
2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219

Prince C. Chambliss, Jr., Esq.
Evans & Petree, PC
1000 Ridgeway Loop Road, Suite 200
Memphis, TN 38120

Mark S. Cheffo, Esq.
Catherine B. Stevens, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

                                            **/s/ Kenneth B. Fromson**
                                              Kenneth B. Fromson