# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MDL Docket No. 1629
Master File No. 04-10981

```
* * * * * * * * * * * * * * * * * * * * * *
                                           *
IN RE: NEURONTIN MARKETING                 *
       SALES PRACTICES AND                 *
       PRODUCTS LIABILITY LITIGATION       *
-------------------------------------------*
                                           *
THIS DOCUMENT RELATES TO:                  *
                                           *
Shearer v. Pfizer Inc, 1:07-cv-11428-WGY   *
                                           *
* * * * * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF THE EVIDENCE
(Volume 3)

BEFORE: The Honorable William G. Young,
District Judge, and a Jury

APPEARANCES:

    FINKELSTEIN & PARTNERS, LLP (By Ronald Rosenkranz, Esq., Kenneth B. Fromson, and Keith L. Altman, Esq.), 1279 Route 300, P.O. Box 1111, Newburgh, New York 12551
        - and -
    JACK W. LONDON and ASSOCIATES, P.C. (By Jack W. London, Esq.), 3701 Bee Cave Road, Suite 200, Austin, Texas 78746
        - and -
    THE LANIER LAW FIRM PLLC (By Kenneth S. Soh, Esq.), 6810 FM1960 West, Houston, Texas 77069, on behalf of the Plaintiffs

1 Courthouse Way
Boston, Massachusetts

April 1, 2010

1          You also understand that for a doctor on his own,
2     in the exercise of his independent medical judgment to use a
3     drug for an off-label use, is not only legal, it may be very
4     good medicine.  Do you understand that?
5          THE WITNESS:  Yes, I do.
6          THE COURT:  So, we've heard statistics here, and
7     evidently you're privy to them, of the percentage of
8     Neurontin sales that were prescribed by doctors for
9     off-label uses.  Have you?  Or is that part of your
10    calculation?
11         THE WITNESS:  Yes, it is.
12         THE COURT:  Well, now, now to my question.  How can
13    you tell how much of that percentage is as a result of
14    illegal marketing rather than legal doctor prescription, if
15    you can.
16         THE WITNESS:  I think the easiest way to do that is
17    to look at -- we have, we have information on the sales over
18    time of the drug for various indications.  And what the
19    judge says is correct, that a doctor is entitled to
20    prescribe an approved drug for an unapproved use in the
21    exercise of his best clinical judgment.  And what we, what I
22    did was, I looked at what do sales look like of a drug for a
23    particular indication, say bipolar, for instance, which is
24    an off-label use, before the company started marketing for,
25    started marketing for the unapproved uses of the drug.  And

1  what you find is that the sales at that point are quite low.
2  They're consistent with what we know from other evidence.
3  There's an academic study out there that says on average for
4  a drug you would expect typically 15 to 20 percent of the
5  uses of the drug might be for unapproved or off-label uses.
6  And when you look at the Neurontin sales prior to when the
7  defendants started promoting for off-label uses, you find
8  that roughly 15 percent of the sales in some of these
9  off-label uses occurs.  So, that to my mind gave me an
10 indication of what you would expect in the ordinary course
11 of events; what you would expect for doctors who, let's just
12 say hypothetically there was no illegal promotion up to a
13 certain point, what would you expect to see in terms of
14 off-label usage.  And we do see low levels of off-label
15 prescriptions.  So let's just assume that all of those are
16 legitimate and that there's nothing wrong with it.
17         Then what happens is a company starts marketing
18 off-label.  And then if you look at the sales graphs, what
19 happened is there's a very dramatic increase in the
20 off-label uses, which I attribute to the effects of the
21 off-label marketing.
22         So that's -- I have sort of a before and after
23 study, before there's illegal promotion and after there's
24 illegal promotion, that gives me a sense of what's the
25 magnitude, how big is the effect of the off-label marketing.

1  And it's quite substantial.  It goes from 15 percent in 1994
2  when Neurontin is first introduced, roughly 15 percent of
3  the uses are for off-label, unapproved uses of the drug.  So
4  let's just assume that all of those are fine and all of
5  those are perfectly legal.
6        By 2002 what do you see?  You see that 94 percent
7  of Neurontin's uses are for off-label and unapproved uses.
8  So, as a crude measure of what's the effect of the off-label
9  marketing, it would be the difference between the 15 percent
10 and the 94 percent.
11 Q  Dr. King, did you prepare a graph that shows Neurontin
12 sales by indication, a bar graph, on-label and off-label
13 during the years between 1995 and 2002?
14 A  Yes, I did.
15        MR. LONDON:  I would ask the technician to queue
16 that up for the Court and counsel.
17        MR. OHLEMEYER:  Your Honor, I --
18        THE COURT:  Wait a minute.  You object to this?
19        MR. OHLEMEYER:  I object on foundation.
20        THE COURT:  Wait.  All right.  Take it down, come
21 to the side bar.
22 SIDEBAR CONFERENCE, AS FOLLOWS:
23        THE COURT:  Where's his report?  He's an expert.  I
24 normally get a copy of the report because that's my anchor.
25 Have you got a copy of the report for me?

```
 1              THE COURT:  I normally go to lunch.
 2              MR. OHLEMEYER:  Okay.  That's fine.
 3              THE COURT:  Do you want to argue this afternoon?
 4              MR. OHLEMEYER:  No, I just want to make, I want to
 5   make a contemporaneous objection.  I can make it in the
 6   morning to make a record.  I just don't want there to be an
 7   issue of me not making it contemporaneously.
 8              THE COURT:  And what is it?
 9              MR. OHLEMEYER:  I would like, based on, based on
10   the cross-examination of Professor King, I would like to
11   move to strike under Rule 702 because his testimony doesn't
12   assist the trier of fact in understanding the facts at
13   issue.
14              THE COURT:  Noted.  Overruled.  Thank you.
15              We'll recess.
16              THE CLERK:  All rise.  Court is in recess.
17              (Adjournment.)
18
19
20
21
22
23
24
25
```