EXHIBIT J

**1**

```
 1    UNITED STATES DISTRICT COURT
 2    FOR THE DISTRICT OF MASSACHUSETTS
 3         MDL Docket No. 1629
 4         Master File No. 04-10981
 5    **************************************
 6    IN RE:  NEURONTIN MARKETING, SALES
 7         PRACTICES AND PRODUCTS
 8         LIABILITY LITIGATION
 9    **************************************
10    THIS DOCUMENT RELATES TO:
      Bulger v. Pfizer, Inc., Et Al
11    Case No. 07-11426-PBS
           and
12    Smith, Et Al v Pfizer, Et Al
      Case No. 05-CV-11515-PBS
13
      **************************************
14
15       VIDEOTAPED DEPOSITION OF CHARLES KING, III
16
              Held At:
17         Greylock McKinnon Associates
              One Memorial Drive
18          Cambridge, Massachusetts
19
20          October 28th, 2008
                9:05 A.M.
21
22    Reported By:  Maureen O'Connor Pollard, RPR, CLR
23
      Videographer:  William Slater
24
```

**2**

```
 1    FOR THE PLAINTIFF:
 2       BY:  RON ROSENKRANZ, ESQ.
 3            KEITH ALTMAN, ESQ.
 4            FINKELSTEIN & PARTNERS
 5            1279 Route 300
 6            Newburgh, New York 12551
 7            800-634-1212
 8            rrosenkranz@lawampm.com
 9
10    FOR THE DEFENDANTS:
11       BY:  PAUL S. MISHKIN, ESQ.
12            DAVID POLK & WARDWELL
13            450 Lexington Avenue
14            New York, New York 10017
15            212-450-4000
16            paul.mishkin@dpw.com
17               and
18       BY:  NICHOLAS P. MIZELL, ESQ.
19            JAMES P. MUEHLBERGER, ESQ.
20            SHOOK, HARDY & BACON
21            2555 Grand Avenue
22            Kansas City, Missouri 64105
23            816-559-2991
24            nmizell@shb.com
```

**3**

```
 1                  INDEX
 2    EXAMINATION                         PAGE
 3    CHARLES KING, III
 4     BY MR. MISHKIN                      5
 5
 6                EXHIBITS
 7    NO.        DESCRIPTION              PAGE
 8    Exhibit 1   Expert report of Charles
 9         King, III....................    4
10    Exhibit 2   One page billing document.....  43
11    Exhibit 3   9/16/02 working paper by
12         Charles King, III.............   58
13    Exhibit 4   Copy of article by Mizik and
14         Jacobson......................   150
15    Exhibit 5   4/4/06 retention letter.......  233
16    Exhibit 6   Group of e-mails..............  233
```

**4**

```
 1              P R O C E E D I N G S
 2
 3         (Whereupon, King Exhibit Number 1 was
 4         marked for identification.)
 5
 6         THE VIDEOGRAPHER:  This is Bill Slater
 7    of Veritext.  Today's date is October 28th,
 8    2008.  The time is 9:05 a.m..
 9         We are here at the offices of Greylock
10    McKinnon Associates located at 1 Memorial Drive,
11    Cambridge, Massachusetts to take the videotaped
12    deposition of Charles King, III in the matter of
13    In Re:  Neurontin Marketing, Sales Practices and
14    Products Liability Litigation in the United
15    States District Court, District of
16    Massachusetts, MDL Docket Number 1629, Master
17    File Number 04-10981, relating to Bulger versus
18    Pfizer, Incorporated, Et Al, Case Number
19    07-11426-PBS, and Smith, Et Al, versus Pfizer,
20    Et Al, Case Number 05-CV-11515-PBS.
21         Counsel will now voice introduce
22    themselves for the record and state whom they
23    represent, and then the court reporter
24    will swear in the witness.
```

**81**

1 B?
2    A.  Yes.
3    Q.  Let's put aside anything that you
4 might have received after putting in the report.
5 I want to focus with you on the documents that
6 you reviewed before you put in your report.
7        What other documents besides those
8 listed on attachment B did you review in
9 connection with your work in this case?
10   A.  Well, the attorneys provided me with a
11 hard drive with a daunting number of documents,
12 so there's all sorts of internal company
13 memoranda or e-mail communications or marketing
14 plans or business plans or publication plans,
15 sales analyses, you know, transcripts of
16 conversation, contacts with outside medical
17 education companies.  There is a large body of
18 evidence, and I reviewed an awful lot of
19 documents.  And out of those, I selected these
20 as examples or as representatives for the points
21 I was trying to make.
22   Q.  And how did you make that selection?
23   A.  I tried to find things that I thought
24 were the -- made the point most clearly, most

**82**

1 succinctly, and were representative of what I
2 had discovered in reading various documents.
3    Q.  All right.  Let's talk about the
4 heading under "Legal Documents."  Well, let me
5 take a step back first.
6        Are there other documents that you are
7 relying upon for purposes of your opinion that
8 you chose not to include in this list of
9 documents relied upon?
10   A.  You know, there are other documents
11 available that support my opinions, but these
12 are the ones that, you know, I specifically
13 chose to rely upon for the opinions in the
14 report.
15   Q.  Okay.  Did you specifically choose to
16 rely upon any deposition testimony other than
17 the deposition testimony listed here under
18 "Legal Documents"?
19   A.  Well, the answer should be no.
20   Q.  Okay.  And if you look at -- well, you
21 said "the answer should be no."  Do you have any
22 reason to think the answer is something other
23 than no?
24   A.  No, I don't.

**83**

1    Q.  All right.  And let's look at --
2    A.  Other than clerical error.
3    Q.  Okay.  Are there other legal documents
4 outside of the -- outside of deposition
5 transcripts that you specifically relied upon
6 for purposes of your opinion in this case that
7 are not reflected in this list?
8    A.  No.
9    Q.  And then there's another heading here
10 "Bates Documents."  Are there any Bates
11 documents that you specifically relied upon for
12 purposes of your opinions expressed in this
13 report that are not listed here on attachment B
14 under the heading "Bates Documents"?
15   A.  No.
16   Q.  Have you reviewed the Bulger or Smith
17 amended complaints?
18   A.  No.
19   Q.  Do you plan to review them?
20   A.  I wasn't asked to.
21   Q.  Do you have any plans to review them
22 in the future?
23   A.  No.
24   Q.  Have you reviewed the complaints in

**84**

1 any of the personal injury cases?
2    A.  No.
3    Q.  Are you familiar with the facts in any
4 of the individual personal injury cases?
5    A.  No.
6    Q.  So I take it you're not offering any
7 opinions that are specific to any of the
8 particular personal injury cases, is that right?
9    A.  That's correct, except that the
10 opinions that I offer here apply to all doctors,
11 so they would apply to the individual doctors in
12 the personal injury cases.  But I'm not offering
13 an opinion to a -- concerning a specific
14 personal injury case.
15   Q.  Have you ever spoken to any of the
16 Plaintiffs in the personal injury cases?
17   A.  No.
18   Q.  Have you read any of the deposition
19 transcripts in the personal injury cases?
20   A.  No.
21   Q.  Do you plan to read any of those?
22   A.  Not unless I'm asked to.
23   Q.  Do you know who the treating
24 physicians were in any of the personal injury